## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

AMY WEXLER, ET AL.,

       Plaintiffs

       v.

CHUBB NATIONAL INSURANCE CO.,
  ET AL.,

       Defendants.

No. 21 CV 2543

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Pending before the Court are (1) defendant Chubb National Insurance Company's motion under Fed. R. Civ. P. 12(b)(6) to dismiss Counts III, IV, and VI of plaintiffs' complaint and to strike their request for punitive damages [8][1]; and (2) defendant Belfor USA Group, Inc.'s Rule 12(b)(6) motion to dismiss Counts V and VII of plaintiffs' complaint [15]. The motions are fully briefed. [19, 21, 22, 23]. For the following reasons, both motions are granted.

### Background

Plaintiffs Amy and Kenneth Wexler own a home in Glencoe, Illinois. [1-1] 6. Between September 1, 2018 and September 1, 2019, the home was insured under a Masterpiece insurance policy issued by Chubb. [1-1] 7-8, at ¶¶ 10, 13. The policy required Chubb to provide plaintiffs with "coverage against all risk of physical loss to [their Home and personal property] unless stated otherwise or an exclusion applies." [*Id.*], at ¶ 14 (internal brackets in original). The policy also provided $10,000 in coverage for "mold remediation expenses," which included, *inter alia*, costs incurred for "developing a mold remediation plan," "implementing the mold remediation plan including the clean up, removal, containment, treatment, or disposal of mold," and "repairing or replacing covered property damaged or removed solely due to mold." [1-1] 56-57

During a thirty-six-hour period between January 29 and January 31, 2019, the Chicago metropolitan area experienced a temperature drop from 32°F to -20°F. [1-1] 8-9, at ¶ 17. Plaintiffs allege that, due to this temperature fluctuation, water service

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

pipes at their home burst and released water on February 1, causing damage to their property. [*Id.*] 9, at ¶ 18. After the water damage was discovered, plaintiffs filed a claim with Chubb. [*Id.*], at ¶¶ 18, 20. On February 1, Amy Wexler spoke with a representative of Belfor, a property remediation company that was a preferred contractor for Chubb, who offered to send someone to inspect the home the next day, February 2. [*Id.*] 9-10, at ¶¶ 24, 25. When he visited plaintiff's home on February 2, the Belfor representative told plaintiffs that their home had incurred extensive water damage, certain areas of the home "needed to be demolished in order to dry it out properly," and "it would be important to dry the house quickly because 'mold starts forming in 24-48 hours.'" [*Id.*] 10, at ¶ 26. Nevertheless, plaintiffs allege, "neither Chubb nor Belfor took any steps to dry out the house before mold spread throughout the home less than a week later, with such failure resulting in substantial Mold Damage to the Property." [*Id.*], at ¶ 28.

On February 6, 2019, a Belfor representative advised plaintiffs that, although Chubb had approved the demolition and removal of some wet walls, ceilings, and floors, Chubb had also instructed Belfor to leave many wet areas "as-is." [1-1] 11, at ¶ 34. On February 7, an air-quality expert retained by Chubb tested the air in plaintiffs' home and found high levels of mold. [*Id.*] 12, at ¶¶ 40, 42. Several days later, Chubb instructed plaintiffs to vacate the home because it was too dangerous to continue living there. [*Id.*], at ¶¶ 43-44. Plaintiffs allege that, as of February 12, 2019, "Chubb and Belfor essentially had complete care and control of the Property." [*Id.*] 13, at ¶ 47. According to plaintiffs, Chubb "engage[d] in a pattern and practice of obstructing the remediation of the [home], directing Belfor to limit the cost of doing so to Chubb." [*Id.*], at ¶ 48.

Plaintiffs hired an architect, structural engineer, and contractor to determine what repairs were needed before they could safely return to their home. [1-1] 10, at ¶ 58. These consultants recommended that the home be demolished and replaced in its entirety. [*Id.*]. After plaintiffs sent these analyses to Chubb, Chubb retained its own contractors and a mold expert to assess the situation. [*Id.*], at ¶¶ 58-59. Plaintiffs allege that Chubb's analysts determined that the home "could be repaired in 133 days at about 22% of the cost of Plaintiffs' estimates." [*Id.*], at ¶ 59. "Plaintiffs believe that [Chubb's analysts were] hired . . . to give a low estimate to support Chubb's economic interest in paying for less than the full work scope required to remediate the home." [*Id.*]. Finally, plaintiffs allege that Chubb "is refusing to pay for anything additional pertaining to mold remediation, citing a $10,000 sublimit in the Policy." [*Id.*], at ¶ 60.

In January 2021, plaintiffs filed this suit in the Circuit Court of Cook County, Illinois, and defendants later removed the case to this Court based on diversity jurisdiction. [1].[2] Plaintiffs' complaint asserts nine claims against Chubb and Belfor:

---

[2] The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because plaintiffs are citizens of Illinois and defendants are citizens of Colorado, Indiana, Michigan, and New Jersey. [1-1] 2.

breach-of-contract claims against both defendants (Counts I and IX); a Section 155 claim against Chubb (Count II); a breach-of-fiduciary-duty claim against Chubb (Count III); a claim under the Illinois Consumer Fraud and Deceptive Practices Act against Chubb (Count IV); a claim for aiding-and-abetting a breach of fiduciary duty against Belfor (Count V); negligence claims against both defendants (Counts VI and VII); and a claim for tortious interference with contract against Belfor (Count X).[3]

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In ruling on a motion to dismiss, a court accepts all well-pleaded facts in the complaint as true and "draw[s] all reasonable inferences in the plaintiff's favor." *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018).

When a federal court exercises diversity jurisdiction, the court "look[s] to the choice-of-law rules of the forum state to determine which state's law applies to the issues before it." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (internal quotation marks omitted). "Under Illinois choice-of-law rules, forum law is applied unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Id.* (internal quotation marks omitted). Because there is no dispute that Illinois law controls here, the Court evaluates the plausibility of plaintiffs' claims under Illinois substantive law. *See Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir. 1992) (district court "will apply the substantive law of the forum state if the case is a diversity case and neither party argues choice of law").

## Discussion

### A. Fiduciary Duty Claims

Count III of the complaint alleges that Chubb breached its fiduciary duty to plaintiffs by ratifying Belfor's allegedly insufficient efforts to remediate the water and mold damage to plaintiffs' home, and by "directing and controlling the scope of that work[.]" [1-1] 19-20, at ¶¶ 86-88. In Count V, plaintiffs allege that Belfor aided this breach of fiduciary duty by following Chubb's instruction to perform only limited

---

[3] Plaintiffs also brought a negligence claim against defendant Aon Private Risk Management Insurance Agency, Inc. (Count VIII), but plaintiffs voluntarily dismissed their claim against Aon before the case was removed. [1] 2.

remediation efforts at plaintiffs' home, thereby helping Chubb "keep its expenses down." [*Id.*] 22, at ¶¶ 98-99.

Defendants seek dismissal of these claims on the ground that plaintiffs have not plausibly alleged that Chubb owed plaintiffs a fiduciary duty. In support, defendants contend that no fiduciary duty exists between an insurer and an insured as a matter of Illinois law. [8] 5; [16] 5-6. Defendants also argue that plaintiffs' allegations that they placed trust in Chubb while pursuing their insurance claim is insufficient to establish that a fiduciary duty existed as a matter of fact. [16] 5. Plaintiffs respond that the complaint plausibly alleges that "a fiduciary duty arose as a matter of fact when they reposed trust and confidence in Chubb to properly direct Belfor in the remediation of the home." [19] 6; *see also* [21] 7-8. Plaintiffs point to allegations in the complaint that they "had no experience with home insurance claims, water damage, mold, remediation or reconstruction," and thus they "reposed trust and confidence in Chubb to ensure that the remediation of Plaintiffs' Home was done promptly, fully, safely, and correctly." [1-1] 14, at ¶¶ 81-82.

"To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must allege the following elements: (1) a fiduciary duty on part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages." *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 768-69 (N.D. Ill. 2011). "[I]t is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 51 (Ill. App. 2004). "A fiduciary duty may be created, however, 'where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former.'" *Fichtel v. Bd. of Dirs. of River Shore of Naperville Condo. Ass'n*, 907 N.E.2d 903, 912 (Ill. App. 2009) (quoting *Martin*, 808 N.E.2d at 52). "This position of superiority may arise by reason of friendship, agency, or experience." *Id.* "[S]ignificant dominance and superiority are necessary to establish a fiduciary relationship." *Id.* (internal bracket and quotation marks omitted).

Even accepted as true, plaintiffs' allegations do not establish the existence of a fiduciary relationship with Chubb. Plaintiffs' allegation that they "reposed trust and confidence in Chubb to ensure" that their home was properly remediated, [1-1] 19, at ¶ 82, is purely conclusory. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Furthermore, a general allegation that an insured trusted its insurer to perform its duties under an insurance contract does not establish the existence of a fiduciary relationship. *See Illinois State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468, 480-81 (Ill. App. 2012) ("Nor would a bare allegation of trust be sufficient to state a cause of action" for breach of fiduciary duty); *see also Martin*, 808 N.E.2d at 52 (allegation that insurer told insureds that it would "take care of their property damage claim and that there would be no need to hire an attorney" was insufficient

4

to establish fiduciary relationship). Likewise, plaintiffs have pleaded no allegations "'from which [the court] could infer that [they] placed trust and confidence in [Chubb] based on friendship, agency or experience,' as is required under Illinois law." *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2015 WL 292947, at *6 (N.D. Ill. Jan. 21, 2015). In the same vein, the complaint does not allege "a history of dealings, or long-standing relationship between the parties, or that [plaintiffs] had entrusted the handling of their insurance affairs to [Chubb] in the past, or that [Chubb] was in a position of such superiority and influence by reason of friendship, agency, or experience." *Martin*, 808 N.E.2d at 52. Finally, nothing in the complaint suggests that Chubb was in a position of "significant dominance and superiority" over plaintiffs. *Fichtel*, 907 N.E.2d at 912.

Because plaintiffs have not plausibly alleged the existence of a fiduciary relationship between themselves and Chubb, the Court will dismiss Count III of the complaint. And because the complaint does not establish that Chubb owed plaintiffs any fiduciary duty, the claim against Belfor for aiding and abetting Chubb in its alleged breach of that fiduciary duty is necessarily implausible and will also be dismissed.

## B. Consumer Fraud Claim

In Count IV of their complaint, plaintiffs allege that Chubb engaged in unfair business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the Act). Plaintiffs maintain that Chubb's "course of adjusting [their] claim by hiring vendors with the purpose of paying Plaintiffs as little as possible . . . is immoral, unethical, and unscrupulous, and it has caused substantial injury to Plaintiffs." [1-1] 21, at ¶ 94.

Chubb argues that plaintiffs' claim under the Act should be dismissed because it is nothing more than a breach-of-contract claim dressed up as a consumer-fraud claim. [22] 5. It also contends that the claim is preempted by Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, which provides "an extracontractual remedy when an insurer's misconduct is vexatious and unreasonable." *Cook ex rel. Cook v. AAA Life Ins. Co.*, 13 N.E.3d 20, 33 (Ill. App. 2014). Because plaintiffs' claim under the Act is based on the same facts underlying their breach-of-contract and Section 155 claims, Chubb argues that the claim should be dismissed. Plaintiffs respond that their claim under the Act "is not a mere restatement of its breach of contract or Section 155 claims against Chubb" and can proceed. [19] 12.

Illinois law recognizes that "an insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 904 (Ill. 1996). For that reason, "[a] plaintiff may bring an independent tort action for insurer misconduct if the plaintiff alleges and proves the elements of the separate tort." *Young v. Allstate Ins. Co.*, 812 N.E.2d 741, 747 (Ill.

App. 2004). But "[m]ere allegations of bad faith or unreasonable and vexatious conduct, without more . . . do not constitute such a tort," and courts must "look beyond the legal theory asserted to the conduct forming the basis for the claim." *Cramer*, 675 N.E.2d at 904. "When the conduct is merely a breach of contract or conduct proscribed by section 155, a Consumer Fraud Act claim on that basis is preempted by section 155." *Cook ex rel. Cook*, 13 N.E.3d at 33.

The Court agrees that plaintiffs' consumer-fraud claim is merely a restatement of their breach-of-contract claim and thus preempted by Section 155. Plaintiffs allege that Chubb violated the Act "by hiring vendors with the purpose of paying Plaintiffs as little as possible," [1-1] 21, at ¶ 94, but this is the same conduct that underlies their contractual and Section 155 claims. *See* [1-1] 16, at ¶ 68 (alleging Chubb breached contract when it "failed, refused, and continues to fail and refuse to pay Plaintiffs the full amount of covered loss and damage"); [*id.*] 18, at ¶¶ 74-75 (alleging Chubb violated Section 155 by "relying on purposefully low estimates of the value of the damaged Property" and "improperly favor[ing] its own economic interests to the detriment of Plaintiffs").

Finally, the cases relied on by plaintiffs are easily distinguishable. In *General Insurance Company of America v. Clark Mall Corporation*, a claim under the Act was allowed to proceed because it "depict[ed] not merely an inefficient failure to follow through on obligations [the insurer] had under the policy, but an insurance company that was doing all in its power to wear down the insureds and to put off indefinitely a frank decision regarding coverage and the reasons for the denial." No. 08 C 2787, 2010 WL 1286076, at *5 (N.D. Ill. Mar. 30, 2010). Similarly, in *Burress-Taylor v. American Security Insurance Company*, the court held that Section 155 did not preempt a claim under the Act where the insurer "continuously refus[ed] to honor Plaintiffs' insurance claims" and falsely represented that "the amounts were being disputed when in reality neither [insurance company allegedly required to pay the claims] was actively pursuing the issue[.]" 980 N.E.2d 679, 689 (Ill. App. 2012). In contrast, plaintiffs' allegations establish that Chubb has investigated their claim [1-1] 18, at ¶ 78, attempted to adjust the claim, [*id.*] 15, at ¶ 60, and "agreed that the claim for loss and damage to the Property was covered under the policy" while "partially den[ying] benefits claimed by Plaintiffs." [1-1] 16, at ¶ 65.

Because plaintiffs' claim under the Act "boils down to an insurer's failure to pay, the remedies provided in § 155 and for breach of contract cover the claim and are sufficient and the tort claim must be dismissed." *Western Howard Corp. v. Indian Harbor Ins. Co.*, No. 1:10-CV-7857, 2011 WL 2582353, at *5 (N.D. Ill. Jun. 29, 2011) (internal quotation marks omitted). The Court therefore grants Chubb's motion to dismiss Count IV.

6

## C. Negligence Claims

In Counts VI and VII, plaintiffs bring negligence claims against Chubb and Belfor. Plaintiffs allege that Chubb "undertook a duty . . . to ensure that the remediation was performed properly," but breached this duty by negligently failing to properly direct and control the remediation efforts, to complete the remediation in a timely manner, and by failing to recognize the potential for extensive mold growth. [1-1] 23, at ¶¶ 106-07. Plaintiffs allege that Belfor undertook a duty to ensure the remediation was handled properly, but breached this duty by negligently failing to take immediate steps on February 2, 2019 to begin drying out the home and by following Chubb's instructions to limit the scope of its remediation efforts. [*Id.*] 24, at ¶¶ 110-11.

Defendants seek dismissal of these claims on essentially the same grounds. Chubb and Belfor argue that Illinois's economic loss doctrine bars plaintiffs' negligence claims because plaintiffs are seeking to recover only an economic loss as a result of defendants' allegedly deficient performance under a contract. [8] 7-8; [16] 3-5. Plaintiffs respond that the economic loss doctrine does not bar their negligence claims because they are not seeking to recover solely an economic loss; they are seeking damages for "property damage caused by Chubb's negligent conduct during the remediation" [19] 10, and for "property damage caused by Belfor's negligence." [21] 5. Plaintiffs also argue that, even if the economic loss doctrine applied, their negligence claims can proceed under an exception to the economic loss doctrine for claims seeking damages resulting from a sudden or dangerous occurrence. [19] 10-11. Finally, plaintiffs contend that their negligence claims are not based on a contract at all, but on a voluntary undertaking that both defendants assumed. [*Id.*] 8-10; [21] 4-5. As such, plaintiffs maintain, their claims sound in negligence and are not subject to the economic loss doctrine.

### 1. Economic Loss Doctrine

Illinois's economic loss doctrine, which is also referred to as the *Moorman* doctrine, provides that plaintiffs cannot use a tort claim to recover purely economic losses. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-49 (Ill. 1982). Stated another way, "a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial transaction is generally limited to any remedies it may have under a contract and cannot recover in tort." *Receivership Mgmt., Inc. v. A.J. Corso & Assocs., Inc.*, No. 19-cv-1385, 2021 WL 1222897, at *18 (N.D. Ill. Mar 31, 2021). "Economic losses are damages for inadequate value, the cost of repairing or replacing a defective product, or resulting lost profits, excluding any claim for personal injury or damage to other property." *Harleysville Ins. Co. v. Mohr Architecture, Inc.*, --- N.E.3d ----, 2021 WL 1626168, at *9 (Ill. App. Apr. 27, 2021). "In order to permit a recovery in tort under a commercial agreement, the plaintiff must be able to demonstrate harm above and beyond mere disappointed expectations."

*Perez v. AMCO Ins. Co.*, No. 08-cv-4364, 2009 WL 755228, at *3 (N.D. Ill. Mar. 23, 2009) (internal quotation marks omitted).

The Court concludes that plaintiffs' negligence claims are barred by the economic loss doctrine because the claims seek purely economic losses. Plaintiffs seek damages from Chubb "for Chubb's negligence in remediating covered water damage"– that is, water damage that was allegedly covered by the parties' insurance contract. [1-1] 19, at ¶ 108. Similarly, plaintiffs seek to recover from Belfor damages caused by Belfor's allegedly negligent and deficient remediation efforts–a remediation that Belfor "agreed" to perform after having discussions with plaintiffs, [1-1] 19, at ¶ 110, and that was ultimately defined in the contract that both parties signed on February 7, 2019, *see* [1-1] 189-90. Even accepting plaintiffs' allegations that defendants negligently failed to perform what they had promised or agreed to do for plaintiffs, any such damages resulting from those broken promises or agreements would amount only to "damage[s] to their property . . . caused by disappointed commercial expectations" and "damages for inadequate value" that are barred by the economic loss doctrine. *In re Chicago Flood Litig.*, 680 N.E.2d 265, 276 (1997). Furthermore, plaintiffs' allegation that defendants caused additional damage to their home during the remediation efforts does not mean the economic loss doctrine is inapplicable. Rather, as the Illinois Supreme Court has made clear, "[w]hen property damage is caused by disappointed commercial expectations"–as is the case here–"the economic loss rule bars recovery in tort." *Id.*

Illinois law recognizes three exceptions to the economic loss doctrine, but the Court concludes that the exception invoked by plaintiffs–for claims involving personal injury or property damage that results from a sudden and dangerous occurrence–does not apply here. For that exception to apply, plaintiffs must allege "an injury to *other* property (*i.e.*, not the property that was the subject of the contract)" and "a sudden and calamitous event." *Perez*, 2009 WL 755228, at *4 n.3 (emphasis in original) (citing *Trans States Airlines v. Pratt & Whittney Canada, Inc.*, 682 N.E.2d 45, 55 (Ill. 1997). In this case, however, the only property that was damaged by a sudden and calamitous event (*i.e.*, mold growth) was the subject of plaintiffs' contracts with defendants: plaintiffs' home itself and the personal property kept within. *See* [1-1] 194 (contract stating that Belfor was to "provide all labor, equipment and materials required to properly repair the specified real property, contents, or structure" of plaintiffs' home); *see also* [*id.*] 22, at ¶ 128 (allegation that "Belfor was given broad discretion to perform the remediation services necessary to protect Plaintiffs' Home and personal property from water damage and mold"). Because plaintiffs have not plausibly alleged damage to "other property," the exception for sudden and dangerous occurrences does not apply.

Plaintiffs rely on *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr. & Company*, 810 N.E.2d 235 (Ill. App. 2004), to resist this conclusion, but that case actually supports defendants' position. Plaintiff homeowners in that case brought a

tort claim against the contractors who built their home, alleging that the contractors allowed moisture to seep into the home during construction, and that the moisture damaged the home itself and plaintiffs' belongings. *Muirfield Vill.*, 810 N.E.2d at 239. The state appellate court held that the economic loss doctrine barred plaintiffs' claim for damage to the home itself because that was "a classic economic loss." *Id.* at 249. However, the court held that plaintiffs could recover "for the losses to [their] personal property," which was not subject to plaintiffs' agreement with the contractors. *Id. Muirfield Village* is thus distinguishable from this case because plaintiffs' personal property was a subject of their contract with both defendants.

## 2. Voluntary Undertaking

Finally, the Court rejects plaintiffs' argument that defendants owed them a duty of care that existed outside of a contract.

"The voluntary undertaking doctrine has generally been applied in the context of a negligence action to establish the element of duty." *Martin*, 808 N.E.2d at 54. The doctrine "imposes liability upon one who gratuitously undertakes to render services to another and who fails to perform those services with due care or with such competence and skill as he or she possessed." *Weisblatt v. Chicago Bar Ass'n*, 684 N.E.2d 984, 987 (Ill. App. 1992). "[T]his theory is to be construed narrowly, and the duty of care imposed upon a party is strictly limited to the extent of the undertaking." *Avila v. Chicago Transit Auth.*, --- N.E.3d ----, 2021 WL 351303, at *6 (Ill. App. Feb. 2, 2021).

Regarding the claim against Belfor, plaintiffs have not plausibly alleged that Belfor voluntarily undertook a duty to remediate their home that was independent of the contract. Plaintiffs entered into the contract with Belfor on February 7, 2019. *See* [1-1] 189-90. The complaint alleges that, "[w]hen Belfor agreed to remediate water damage at the Property, it undertook a duty to Plaintiffs to ensure that the remediation was performed properly[.]" [*Id.*] 19, at ¶ 110. Plaintiffs also allege that a Belfor representative visited their home on February 2, told plaintiffs that the home needed to be dried out, and advised them that mold would start forming within one or two days. [*Id.*] 5, at ¶ 26. But plaintiffs do not allege that they hired Belfor on February 2, nor do they allege that Belfor agreed on February 2 that it would perform any such work. Accordingly, the Court finds that plaintiffs have not plausibly alleged that Belfor voluntarily undertook any duty to plaintiffs before the parties entered into a contract on February 7.

As for the claim against Chubb, plaintiffs allege that Chubb "elected to direct and control the remediation of water damage at the Property" and thereby "undertook a duty" to ensure the remediation was done properly. [1-1] 18, at ¶ 106. But the complaint does not plausibly allege that this duty existed separate and apart from

the parties' insurance contract.[4] Nor would the Court find any such allegation plausible, given that the parties' insurance contract obligated Chubb to cover mold-remediation expenses, including the development and implementation of a mold-remediation plan. *See* [1-1] 56-57. Furthermore, plaintiffs' contract with Belfor specifically states that all of Belfor's remediation work was "subject to the terms of the insured policy of insurance which sets the scope and price of the work based upon industry standards." [1-1] 194. To be sure, plaintiffs argue in their opposition to Chubb's motion to dismiss that "Chubb's decision to voluntarily assume control of the remediation of the Home" is "a duty not imposed by the Chubb policy[.]" [19] 9. While this "argument is raised in Plaintiffs' response brief . . . the underlying facts . . . are not pled in the complaint, and a complaint may not be amended by briefs in opposition to a motion to dismiss." *Smith v. Vill. of Broadview*, No. 19-cv-5319, 2020 WL 3050768, at *10 (N.D. Ill. Jun. 8, 2020).[5]

For these reasons, the Court concludes that the voluntary-undertaking doctrine does not save plaintiffs' negligence claims from the economic loss doctrine, and the Court will dismiss Counts VI and VII.

### D. Punitive Damages

Finally, plaintiffs' complaint seeks an award of punitive damages against Chubb to the extent that such damages are permitted by law. [1-1] 24. Chubb argues that the Court should strike that request because Illinois law does not permit an award of punitive damages for breach-of-contract claims, and because plaintiffs' tort claims–for which an award of punitive damages are generally available–are barred by the economic loss doctrine. Chubb also contends that an award of punitive damages is not permitted for plaintiffs' Section 155 claim. [8] 9. Plaintiffs respond that punitive damages are available because their tort claims are not barred by the

---

[4] The Court recognizes that Chubb did not raise this argument in its motion to dismiss, but "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Because the plausibility of plaintiffs' negligence claim against Chubb was properly before the Court, the Court finds it appropriate to dismiss the claim on this ground: this is essentially the same argument raised by Belfor in support of dismissing the negligence claim against it, and the Court is convinced that both negligence claims are implausible in light of the economic loss doctrine.

[5] Chubb also argues that the voluntary-undertaking doctrine does not apply when "the person who accepts the service is aware that the service was incompetent," and here plaintiffs "accepted Belfor's continued work to mitigate the damage to the residence" despite their concerns that the "reduced scope" of Belfor's work "would be insufficient to remedy the water damage." [22] 4. The Court rejects this argument because Chubb cites no allegations in the complaint to support their argument that plaintiffs "accepted" Belfor's allegedly deficient work, and because such a reading of plaintiffs' complaint would be highly implausible.

economic loss doctrine. [19] 12-13. They do not address the availability of punitive damages for their Section 155 claim.

"[P]unitive damages are not available in actions for breach of contract because a party suing for breach of contract is entitled only to the benefit of his bargain and the purpose of awarding damages is to place the injured party in the position he would have been had it not been for the breach." *Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463 (Ill. App. 2004). The only exception to this rule is "where the breach constitutes an independent tort." *Id.*

Because the Court has found that plaintiffs' tort claims are barred by the economic loss rule, plaintiffs cannot recover punitive damages from Chubb based on those claims. Likewise, punitive damages are not available for a breach-of-contract claim. *See Cruthis*, 822 N.E.2d at 463. These determinations will not, however, preclude plaintiffs from recovering the full amount of relief to which Section 155 entitles them, should the fact-finder ultimately rule in their favor on that claim. The Illinois Supreme Court has characterized Section 155 as "a limited statutory exception to th[e] rule" that punitive damages are not available for a breach-of-contract claim, and a provision that was "intended to make suits by policyholders economically feasible and to punish insurers.: *Cramer*, 675 N.E.2d at 901. Thus, while plaintiffs may not be able to recover punitive damages, *per se*, under Section 155, that provision does permit recovery of "reasonable attorney fees, costs, and a limited penalty," in addition to the amount recoverable for the breach itself. *Id.* For these reasons, Chubb's motion to strike the claim for punitive damages is granted.

11

## Conclusion

For the reasons set forth above, the Court grants both defendants' motions to dismiss, and Counts III, IV, V, VI, and VII of plaintiffs' complaint are hereby dismissed with prejudice.[6] Plaintiffs' request for punitive damages against Chubb is also stricken.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: January 31, 2022**

---

[6] The Court is mindful that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018). But that rule is inapplicable here because the Court is not dismissing "the entire action," plaintiffs did not request an opportunity to amend the complaint in response to defendants' motions, *see* [19] 13 (requesting that Chubb's motion to dismiss be denied in its entirety); [21] 9 (same as to Belfor's motion), and the Court does not see how plaintiffs could amend the complaint to plausibly cure the defects set forth in this Memorandum Opinion and Order. Any motion for leave to amend the complaint must be filed no later than twenty-one days from entry of this order and must be accompanied by a copy of the proposed amended complaint, a redline version showing changes from the original complaint, and a brief of no more than five pages explaining how the proposed amended complaint cures the deficiencies identified in this decision. *See, e.g., Gutierrez v. Wemagine.AI LLP*, No. 21 C 5702, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022).