UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY WEXLER, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> CHUBB NATIONAL INSURANCE CO., ET AL., <br><br> Defendants. | No. 21 CV 2543 <br><br> Magistrate Judge McShain |

### MEMORANDUM OPINION AND ORDER

Pending before the Court are plaintiffs Amy and Kenneth Wexler's motion for leave to file an amended complaint [54],[1] defendant Chubb National Insurance Company's motion to compel appraisal and partially stay litigation [35], and defendant Belfor USA Group, Inc.'s motion to stay litigation [39]. The motions are fully briefed. [41, 44, 45, 55, 56]. The Court held a hearing on the defense motions on February 4, 2022 and, without objection, held them in abeyance pending a ruling on the motion for leave to file an amended complaint. [52]. For the following reasons, plaintiffs' motion for leave to file an amended complaint is granted in part and denied in part, and defendants' motions to compel appraisal and stay are granted.

### Background

In an earlier decision, the Court dismissed plaintiffs' negligence claims against Chubb (plaintiffs' home insurance company) and Belfor (a property remediation company that was one of Chubb's preferred contractors) on the ground that they were barred by Illinois's economic loss doctrine. *Wexler v. Chubb Nat'l Ins. Co.*, No. 21 CV 2543, 2022 WL 279571, at *5-7 (N.D. Ill. Jan. 31, 2022). Plaintiffs had alleged that Chubb breached its duty to ensure that the remediation of their home–necessitated by a burst water pipe that caused extensive damage and mold growth in the home– was conducted properly. *Id.*, at *5. Plaintiffs had also alleged that Belfor was negligent because it failed to take immediate steps to dry out the home and negligently agreed to limit the scope of the remediation work based on Chubb's instructions. *Id.* Because the damages plaintiffs sought were caused by defendants'

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

"negligent[ ] fail[ure] to perform what they had agreed or promised to do" in the contracts that they had entered into with plaintiffs, the Court held that the damages were "caused by disappointed commercial expectations' and 'damages for inadequate value' that are barred by the economic loss doctrine." *Id.* (quoting *In re Chicago Flood Litig.*, 680 N.E.2d 265, 276 (Ill. 1997)).

The Court also held that plaintiffs failed to plausibly allege that either defendant had voluntarily undertaken a duty to plaintiffs that was independent of a duty based in contract, such that the voluntary undertaking doctrine did not save their claims from the economic loss doctrine. *Wexler*, 2022 WL 279571, at *6-7. Regarding the claim against Chubb, the Court held that "the complaint does not plausibly allege that" Chubb's duty to ensure that the remediation of the house was done properly "existed separate and apart from the parties' insurance contract." *Id.*, at *7. The Court added that it would not "find any such allegation plausible, given that the parties' insurance contract obligated Chubb to cover mold-remediation expenses, including the development and implementation of a mold-remediation plan." *Id.* (citing [1-1] 56-57). As for the claim against Belfor, the Court ruled that plaintiffs did not plausibly allege that "Belfor voluntarily undertook any duty to plaintiffs before the parties entered into a contract[.]" *Id.*

In their proposed amended complaint [54-1], plaintiffs raise one negligence claim against Chubb and two negligence claims against Belfor.[2] Count III alleges that Chubb owed plaintiffs a duty of care "in connection with mold growth and spread in the Home and on the Wexlers' personal property" because Chubb "elected to direct and control the remediation of water damage at the Wexlers' Home and undertook to ensure that the remediation of water damages was done properly and in accordance with applicable industry standards." [54-1] 28, at ¶ 100. Chubb allegedly breached this duty by failing to properly direct and control the remediation efforts. [*Id.*], at ¶ 101. Count IV is a negligence claim against Belfor based on events that occurred before plaintiffs and Belfor signed a work authorization on February 7, 2019. [*Id.*] 29-30, at ¶¶ 104-110. Plaintiffs allege that Belfor owed them a similar duty of care respecting the remediation of water damage because a Belfor representative inspected the home on February 2, 2019, "identified areas of the Home that needed to be demolished to be dried properly," and "told Amy Wexler that Belfor would return to the Wexlers' home to remediate the water damage." [*Id.*] 29, at ¶ 105. Plaintiffs

---

[2] The proposed amended complaint repleads three claims that the Court previously dismissed: the claims for breach of fiduciary duty against Chubb, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act against Chubb, and aiding and abetting a breach of fiduciary duty against Belfor. Plaintiffs explain that these claims are being repleaded only to preserve the issue for appeal [54] 2 n.2, and the motion for leave to file an amended complaint is denied as to these claims. The proposed amended complaint also pleads two new counts: tortious interference with contract against Chubb, and breach of bailment against Belfor. Defendants may answer or move to dismiss these claims after the appraisal process is complete and the Court lifts the stay.

2

allege that Belfor breached this duty by waiting five days to begin working on the home, during which time "mold . . . began forming and spreading in the Home[.]" [*Id.*], at ¶ 106. Finally, Count VI is a negligence claim based on Belfor's actions after the work authorization was signed. [*Id.*] 33-35, at ¶¶ 122-132. Plaintiffs allege that the scope of the work authorization "was limited to the remediation of damage in the portions of the Home damaged by the burst pipes as observed as of February 7, 2019." [*Id.*] 33, at ¶ 124. At that time, plaintiffs contend, neither they nor Belfor knew of "damage due to mold in other portions of the Home[.]" [*Id.*]. Plaintiffs allege that, after an air-quality expert confirmed, on February 8, the presence of mold in the rooms damaged by the burst pipe, "Belfor began remediating mold in the vast majority of the Home and on the contents in the Home" but "without issuing a new work authorization," without "expanding the scope of the existing Work Authorization," and thus "without a contract." [*Id.*], at ¶ 125. In attempting this remediation, plaintiffs contend, Belfor "undertook a duty of ordinary care to the Wexlers," which it then breached by failing to properly remediate the mold and allowing "mold to spread to areas of the Home and its contents not within the scope of the Work Authorization." [*Id.*] 34, at ¶¶ 126-127.

**Discussion**

**I.     Motion For Leave To File Amended Complaint**

"Under Rule 15(a)(2), a party may amend its pleadings with the court's leave, which courts freely give when justice so requires." *Majors v. Tootsie Roll Indus., Inc.*, Case No. 1:20-cv-3044, 2021 WL 4582108, at *2 (N.D. Ill. Aug. 11, 2021) (internal quotation marks omitted). "District courts, however, also have discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id.* (internal quotation marks omitted). In the context of Rule 15, "futility . . . refers to the inability to state a claim[.]" *Schilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. 2010).

**A.     Negligence Claim Against Chubb**

The Court concludes that the negligence claim against Chubb remains implausible in light of the economic loss doctrine. In its earlier decision dismissing the negligence claim, the Court found that "the parties' insurance contract obligated Chubb to cover mold-remediation expenses, including the development and implementation of a mold-remediation plan." *Wexler*, 2022 WL 279571, at *7. For that reason, plaintiffs could not point to a duty that Chubb owed that was independent of the parties' insurance contract. *Id.* Plaintiffs do not contest this ruling; rather, they allege "on information and belief" that "Chubb disputes" that it owed plaintiffs a duty to "remediate and repair water-damaged portions of the Home" or a duty to "remediate the mold that formed due to Chubb's and Belfor's alleged negligence in

3

remediating and repairing water-damaged portions of the home." [54] 6.[3] Plaintiffs argue that, "[i]f it is determined in this litigation that the [insurance] Policy did not impose upon Chubb a duty to remediate water damage to the Home or develop and implement a mold remediation protocol," the Court should find that their negligence claim is plausible because "Chubb assumed duties that are outside the scope of the Policy." [54] 6.

The Court rejects this argument. First, the proposed amended complaint does not plausibly allege that Chubb undertook any duty to plaintiffs that was not based in the parties' insurance contract. To the contrary, the proposed complaint alleges that Chubb "agreed that the claim for loss and damages to the Wexlers' Home was covered under the policy," [54-1] 82, and this allegation suggests that Chubb dealt with plaintiffs in accordance with the obligations imposed by that policy. Moreover, there are no non-conclusory allegations in the complaint depicting Chubb or a Chubb representative agreeing to perform or be responsible for any remediation work, let alone remediation work that was outside the scope of the insurance policy. This omission contrasts notably with plaintiffs' allegations against Belfor, which–as discussed in more detail below–establish that Belfor agreed to perform remediation work for plaintiffs either with no contract in place or without a contract specifically defining the scope of its remediation work. Second, as explained in the Court's earlier decision, the economic loss rule limits "a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial transaction" to "any remedies it may have under a contract." *Wexler*, 2022 WL 279571, at *5. Plaintiffs' allegations establish that they expected Chubb to properly resolve their insurance claim because Chubb had stated that they would do so, and because a Chubb representative had made generalized assurances to that effect. *See* [54-1] 7-8, at ¶ 24; [*id.*] 10, at ¶ 32. These allegations confirm that the damages plaintiffs seek to recover from Chubb flow from their "disappointed commercial expectations" as to how Chubb would handle their claim and thus may not be recovered in tort. *In re Chicago Flood Litig.*, 680 N.E.2d at 276.

For these reasons, plaintiffs' motion for leave to file an amended complaint is denied as to Count III because the proposed amendment is futile. *Schilke*, 758 F. Supp. 2d at 554.

---

[3] Contrary to misstatements in plaintiffs' proposed amended complaint [54-1], at ¶¶ 26, 89, and their motion for leave to amend [54] 6, the Court did not hold that the insurance policy "requires Chubb to ensure that the remediation of water damage was done properly and imposed a duty on Chubb to develop and implement a mold remediation plan." Rather, the Court found only that the policy "obligated Chubb to *cover* mold-remediation expenses, including the development and implementation of a mold-remediation plan." *Wexler*, 2022 WL 279571, at *7 (emphasis added).

### B. Negligence Claims Against Belfor

#### 1. Count IV

Plaintiffs argue that Count IV, which is based on Belfor's actions between February 2, 2019 and the execution of the work authorization on February 7, 2019, is not barred by the economic loss doctrine because there was no contract between the parties at that time. [54] 3. Belfor responds that plaintiffs' claim is foreclosed by the Court's earlier decision, which held that the economic loss doctrine barred plaintiffs' negligence claim because plaintiffs "did not allege that they hired Belfor on February 2, 2019, nor did the Plaintiffs allege that Belfor agreed that it would perform any specific work on any specific date." [56] 3.

The Court concludes that Count IV states a plausible negligence claim that is not barred by the economic loss doctrine. "Where a party has a duty independent of any contractual relationship, the economic loss doctrine does not apply." *Nixon v. United States*, 916 F. Supp. 2d 855, 861 (N.D. Ill. 2013) (applying Illinois law). Here, plaintiffs allege that a Belfor representative "told Amy Wexler" on February 2, 2019 that "Belfor would return to the Wexlers' home to remediate the water damage," and that Belfor accordingly "assumed a duty to handle the remediation with ordinary care." [54-1] 29. Plaintiffs further allege that they did not enter into a contract with Belfor until February 7, 2019, and Belfor does not argue that the work authorization contradicts this allegation. Regardless of whether plaintiffs hired Belfor on February 2, these allegations permit the Court to infer that Belfor voluntarily undertook to render services–namely, water-damage remediation services–to plaintiffs several days before the work authorization was signed, and that Belfor therefore owed plaintiffs a duty of ordinary care in performing those services. For these reasons, the motion for leave to file an amended complaint is granted as to Count IV.

#### 2. Count VI

Plaintiffs argue that Count VI, which is based on Belfor's conduct after the work authorization was executed, is not barred by the economic loss doctrine because (1) the claim concerns Belfor's work in areas of the home that were not subject to the work authorization, and (2) Belfor's negligent work on areas of the home that were subject to the work authorization caused damage to other property–namely, the remainder of their home and the personal property–that was not subject to the work authorization. [54] 3-4. Belfor responds that this claim simply re-alleges that plaintiffs incurred property damages caused by their disappointed commercial expectations as to how Belfor would remediate the home and is thus barred by the economic loss doctrine. [56] 5-6.

The Court concludes that Count VI states a plausible negligence claim against Belfor.

First, as already noted, Illinois's "economic loss doctrine does not apply where a duty arises outside of a contract." *Nixon*, 916 F. Supp. 2d at 861 (internal brackets and quotation marks omitted); *accord Golf v. Henderson*, 876 N.E.2d 105, 113 (Ill. App. 2007) ("The *Moorman* doctrine, however, does not apply when a duty arises that is extracontractual.") (internal quotation marks omitted). Here, plaintiffs allege that (1) when Amy Wexler signed the work authorization, she contemplated that "Belfor would be performing work only on the portions of the Home that had been damaged by the burst pipes," (2) neither plaintiffs nor Belfor knew that other areas of the home–beyond those visibly damaged by water–were in need of repair or remediation, and (3) the work authorization accordingly covered only those areas of their home that had been visibly damaged by the burst water pipe before February 7, 2019. [54-1] 33, at ¶ 124. These allegations plausibly suggest that, when Belfor began performing remediation work on areas of the home beyond those visibly damaged by the burst pipe, Belfor voluntarily undertook a duty to plaintiffs that was not based in the work authorization. And while Belfor contends that plaintiffs' interpretation of the work authorization is "tortured" [56] 5, Belfor notably fails to cite any contractual language that would support its argument, nor does Belfor argue that the contract itself refutes plaintiffs' allegations. *Cf. Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence.").

Second, the economic loss doctrine does not apply "where the plaintiff has sustained personal injury or property damage resulting from a sudden or dangerous occurrence." *Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 810 N.E.2d 235, 247 (Ill. App. 2004). For this exception to apply, "plaintiffs must allege 'an injury to *other* property (*i.e.*, not the property that was the subject of the contract)' and 'a sudden and calamitous event.'" *Wexler*, 2022 WL 279571, at *6 (quoting *Perez v. AMCO Ins. Co.*, No. 08-cv-4364, 2009 WL 755228, at *4 n.3 (N.D. Ill. Mar. 23, 2009). Consistent with this exception, plaintiffs allege that Belfor damaged "other property"–namely, areas of the home not subject to the work authorization and personal property that was not specified in the contract–in the course of performing the remediation work that was covered in the work authorization. [54-1] 34, at ¶¶ 128, 130. Plaintiffs also allege that their damages were the result of "sudden and dangerous widespread mold" growth [*id.*] 34, at ¶ 128, which constitutes "a sudden and calamitous event for purposes of analyzing the application of the economic loss rule." *Muirfield Vill.*, 810 N.E.2d at 249. Although plaintiffs cannot recover in tort for any damages Belfor caused in performing the remediation work that was specified in the parties' contract, the economic loss doctrine does not bar them from recovering in tort the damages to "other property" caused by sudden and calamitous mold growth that spread through the home due to Belfor's alleged negligence.

For these reasons, plaintiffs' motion for leave to file an amended complaint is granted as to Count VI.

6

**II.     Motions To Compel Appraisal And Stay Litigation**

The insurance policy that Chubb issued to plaintiffs contains the following appraisal provision:

> If you or we fail to agree on the amount of loss, you or we may demand an appraisal of the loss. Each party will select an appraiser within 20 days after receiving written request from the other. The two appraisers will select a third appraiser . . . Written agreement signed by any two of the three appraisers shall set the amount of the loss. However, the maximum amount we will pay for a loss is the applicable amount of coverage even if the amount of the loss is determined to be greater by appraisal.

[1-1] 98.

Before plaintiffs filed this suit, the parties could not agree on the amount of the loss for (1) damages to plaintiffs' home, (2) damages to the home's contents and plaintiffs' personal property, and (3) plaintiffs' entitlement to additional living expenses. *See* [7] 45, at ¶ 24 (Chubb's counterclaim). Chubb accordingly demanded an appraisal of the damage to the home and identified its appraiser on December 23, 2020. [*Id.*]; *see also* [35] 3. Plaintiffs responded with a demand to appraise the entire loss, including amounts Chubb allegedly owed for damage to the contents of the home and for additional living expenses. [35] 4. Because Chubb believed that it was not obligated to pay certain amounts included in plaintiffs' claim, Chubb demanded that the appraisal include a line-item breakdown of damages, rather than a lump-sum figure, so that it could apply any policy exclusions to the appraisal award. [*Id.*]. Plaintiffs refused that demand and brought this suit. [*Id.*].

Chubb now moves that plaintiffs be compelled to participate in the appraisal process. [35] 8-9. It also moves that the Court require that the appraisal award be itemized so that Chubb can apply policy limits and exclusions to the award. [*Id.*] 9-12. Plaintiffs respond that their dispute with Chubb does not fall within the scope of the appraisal clause because Chubb has "raised numerous policy exclusions and limitations as putative coverage defenses," and appraisals cannot be used to resolve coverage disputes. [41] 3. Plaintiffs also argue that staying the case while an appraisal proceeds would not be efficient because "an appraisal award is not binding and does not preclude the insured from litigating its rights against its insurer in court." [*Id.*] 5. Finally, plaintiffs argue that Chubb's motion is premature, and that Chubb has waived its right to compel an appraisal. [*Id.*].

For its part, Belfor has separately moved to stay the case if the Court compels plaintiffs and Chubb to participate in the appraisal process. [39] 3-4. Plaintiffs oppose this request. [41] 14-15.

7

A.  **Legal Standard**

"Illinois courts view appraisal clauses as analogous to arbitration clauses and hold that both types of clauses are valid and enforceable in a court of law." *70th Ct. Condo. Ass'n v. Ohio Sec. Ins. Co.*, No. 16 CV 7723, 2016 WL 6582583, at *4 (N.D. Ill. Nov. 7, 2016). "A party seeking to compel arbitration 'need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration.'" *Maggard v. CCC Info. Servs., Inc.*, No. 14 C 2368, 2015 WL 1112088, at *2 (N.D. Ill. Mar. 10, 2015) (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)).

B.  **Analysis**

The Court grants Chubb's motion to compel appraisal. First, there is no dispute that the insurance policy contains an agreement to participate in the appraisal process or that plaintiffs refused Chubb's demand for an appraisal.

Second, there is a dispute within the scope of the appraisal clause because plaintiffs and Chubb disagree as to the amount of the loss for damages to plaintiffs' home, damages to plaintiffs' personal property within the home, and plaintiffs' entitlement to additional living expenses. *See, e.g.*, [20] 4, at ¶ 13 (plaintiffs admitting that they dispute "Chubb's valuation of the damage to the House caused by the Loss"). The Court recognizes that not all of the disputes between plaintiffs and Chubb concern the amount of the loss: Chubb has raised numerous coverage defenses (which both sides agree cannot be resolved during the appraisal), and plaintiffs' negligence claim is not based on the insurance policy, but rather on a duty voluntarily undertaken to plaintiffs. But the fact that Chubb has raised coverage disputes does not preclude the appraisal process from proceeding. *See, e.g.*, *Runaway Bay Condo. Ass'n v. Philadelphia Indem. Ins. Cos.*, 262 F. Supp. 3d 599, 603 (N.D. Ill. 2017) ("Thus, the question of whether the Policy requires replacement of undamaged property to achieve matching is not appropriate for appraisal. This does not mean that Runaway Bay's motion to compel appraisal must be denied. It means only that the 'matching' issue will not be part of the appraisal process."). Nor have plaintiffs cited any authority holding that an appraisal cannot proceed unless it would resolve all disputes between the parties who had agreed to the appraisal provision. *See Maggard*, 2015 WL 1112088, at *4 (granting motion to compel appraisal to determine value of insureds' vehicle, even though "the Maggards' complaint presents much more than a disagreement between them and the Hartford concerning actual cash value of their vehicle").

Third, the Court rejects plaintiffs' arguments that the motion is unripe. "Courts have treated a motion to compel appraisal as a motion for judgment on the pleadings, ordering an appraisal only after the defendant has filed an answer." *Wildberry Condo. Ass'n v. Travelers Indem. Co. of Am.*, 522 F. Supp. 3d 432, 445

(N.D. Ill. 2021). Because plaintiffs have answered Chubb's counterclaim, *see* [20], the motion is ripe for decision.

Fourth, while Illinois courts have recognized that, "like an arbitration clause, an appraisal clause may be waived," *Lundy v. Farmers Grp., Inc.*, 750 N.E.2d 314, 319 (Ill. App. 2001), waiver is "disfavored," *Prescott Mill Condo. Ass'n v. Mid-Century Ins. Co.*, No. 20 C 6944, 2021 WL 3700742, at *2 (N.D. Ill. Aug. 4, 2021), and will be found only where the evidence is "clear, unequivocal, and decisive." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). Plaintiffs have not come close to making that showing. To the contrary, Chubb invoked the appraisal clause before the suit was filed, brought a counterclaim seeking to enforce the appraisal clause, and has moved to compel the appraisal. The fact that Chubb did not move to compel the appraisal immediately after plaintiffs refused to participate in the appraisal process and brought this suit, and instead moved to dismiss some of plaintiffs' claim, is not clear and unequivocal evidence on which the Court could find that Chubb has waived its right to invoke the appraisal. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 995 (7th Cir. 2011) ("a party does not waive its right to arbitrate by filing a motion to dismiss"). Likewise, Chubb's participation in discovery was merely responsive to the suit plaintiffs brought, and such responsive participation in the litigation does not support a finding of waiver. *See Honomichl v. Integrated Int'l Payroll, Ltd.*, No. 09-CV-7128, 2010 WL 2025395, at *7 (N.D. Ill. May 21, 2010) ("Responding to litigation initiated by Plaintiffs, or acting as required under applicable rules, is not waiver of the right to arbitrate.").

Fifth, while the Court concludes that the appraisal will not be binding on the parties, the Court does not find that this consideration permits the Court to deny the motion to compel. Because "the common law placed great importance upon the individual's right to seek redress in court," "any waiver of that right must be clear and unambiguous." *DeGroot v. Farmers Mut. Hail Ins. Co. of Iowa*, 643 N.E.2d 875, 876 (Ill. App. 1994). In the context of insurance appraisals, the insurer "could not require the [insured] to accept the appraisers' decision as final without telling the [insured] that the decision would be final." *Id.* Thus, "an appraisal clause that explains the mechanics of how an umpire and the appraisers are selected and how they may reach an agreement, but that only states that an agreement signed by two of those three 'will set the amount of loss,' does not make evident to the parties that such a decision would be irrevocable." *70th Ct. Condo. Ass'n*, 2016 WL 6582583, at *4. Here, the insurance policy does not state that the appraisers' decision will be binding on the parties, nor does the policy state that participation in the appraisal process results in a forfeiture of plaintiffs' ability to sue. Rather, the appraisal clause simply explains the mechanics of how the appraisers will be chosen and that their decision "shall set the amount of the loss." This language inot sufficient to make the appraisal binding on the parties. *See DeGroot*, 643 N.E.2d at 876; *70th St. Condo. Ass'n*, 2016 WL 6582583, at *2. Nevertheless, because Illinois law treats appraisal clauses akin

9

to arbitration clauses, the Court concludes that the motion must be granted notwithstanding the non-binding nature of the provision. *See Maggard*, 2015 WL 1112088, at *5; *see also Travis v. Am. Mfrs. Mut. Ins. Co.*, 782 N.E.2d 322, 325 (Ill. App. 2002) ("Where there is a valid arbitration agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial court must compel it.").

Sixth, the Court will require that the appraisal award be sufficiently itemized and segregated to enable the parties and the Court to identify the amount of loss (actual cash value and replacement cost) for all coverage categories, including the home itself, the contents of the home, additional living expenses, mold remediation, and rebuilding to code.

Finally, the Court will stay plaintiffs' claims against Chubb until the completion of the appraisal process. *See Maggard*, 2015 WL 1112088, at *2, *4 (concluding that stay of litigation was mandatory where court ordered parties to participate in appraisal process); *Prescott Mill Condo. Ass'n*, 2021 WL 3700742, at *3 (staying litigation after granting motion to compel appraisal). The Court will also exercise its discretion to stay the litigation against Belfor because (1) the disputes between plaintiffs and Chubb as to the amount of the loss may affect the scope of damages against Belfor, and (2) there is overlap in the discovery that is likely to be needed respecting the claims against both defendants, such that, if the case were allowed to proceed against Belfor, duplicative discovery would be necessary once the stay as to Chubb was lifted.

## Conclusion

Plaintiffs' motion for leave to file an amended complaint [54] is granted in part and denied in part as provided above. Plaintiffs shall promptly file the amended complaint as a separate entry on the docket. Chubb's motion to compel appraisal and partially stay litigation [35] is granted. Plaintiffs and Chubb are ordered to participate in the appraisal process, and the appraisal award must be sufficiently itemized and segregated to enable the parties and the Court to identify the amount of loss (actual cash value and replacement cost) for all coverage categories, including the home itself, the contents of the home, additional living expenses, mold remediation, and rebuilding to code. The parties shall file a joint status report respecting the appraisal process on June 1, 2022. Belfor's motion to stay [39] is granted. All further proceedings in this case are hereby stayed until the appraisal process has been completed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 25, 2022**