IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY WEXLER and KENNETH A. WEXLER, )<br>Plaintiffs, )<br>vs. )<br> )<br>CHUBB NATIONAL INSURANCE COMPANY, )<br>and BELFOR USA GROUP INC., )<br>Defendants. ) | Case No. 1:21-cv-02543 |

**DEFENDANT CHUBB NATIONAL INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**

NOW COMES Defendant and Counterclaim Plaintiff, Chubb National Insurance Company ("Chubb"), by and through their attorneys, Foran Glennon Palandech Ponzi & Rudloff P.C., and for its Opposition to Plaintiffs' Motion to Compel and for Sanctions ("Motion") (Dkt. 86) states as follows:

**Correcting The Underlying Factual Record**

The "factual" record asserted in Plaintiffs' Motion suffers from the same inaccuracies alleged by Plaintiffs in their original April 13, 2023, Motion to Compel (Dkt. 76). Due to the space limitations provided under Local Rule 7.1, Chubb incorporates and relies upon the factual record outlined in Chubb's Opposition to Plaintiffs' April 13, 2023, Motion to Compel with regard to Plaintiff's corporate deposition noticed topics and the objections of Chubb to those designations. (Dkt. 80, PageID #: 1264-1265).

To resolve the dispute over objections to corporate designee topics that were vague, ambiguous, unduly burdensome, and not relevant, Plaintiffs' filed a Motion to Compel on April 13, 2023. (Dkt. 76). On April 24, 2023, Chubb filed an Opposition in support of its objections to ten of the deposition topics. (Dkt. 80). Rather than waiting for the Court's ruling on the Motion to Compel, Plaintiffs' elected to proceed on April 25, 2023, with a corporate deposition of Chubb's Walter Haessig. Thereafter, instead of filing a reply in support of its Motion to

Compel, Plaintiffs' elected – on the day the reply was due – to withdraw its Motion to Compel and not have the Court determine whether Chubb's objections were appropriate. (Dkt. 83).

In support of its present Motion, Plaintiffs' rely on only two cases – from North Carolina and Massachusetts - that a protective order should have been sought by Chubb in response to the corporate designee topics. (Dkt. 86, PageID #: 1356). Plaintiffs' Motion, though, fails to cite to the guidance provided in this District by Judge Kocoras the *noticing* party should bring a motion to compel production of a corporate designee when there are objections based upon relevance, privilege, scope, and unreasonable burden, and for the court to then rule upon the validity of the objections to determine whether corporate testimony is appropriate. *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *8 (N.D. Ill. Jan. 24, 2000). Finally, Plaintiffs' reliance on a Kentucky case to argue a privilege or work product objection should be lodged only during a corporate designee deposition is inconsistent with the binding guidance of Judge Korcoras' *Smithkline* decision that Plaintiffs' failed to distinguish in their Motion.

Now, Plaintiffs' have renewed their request for Chubb to present witnesses on these objectionable ten topics, but Plaintiffs' new Motion tellingly fails to offer any argument *why* the on-point law and support offered by Chubb in its Opposition to the Motion to Compel for topic numbers 4, 5, 7, 12, 13, and 15 is not determinative. (Dkt. 80, PageID #:1266-1273). The law is clear that Plaintiffs' topics are not appropriate in this District. Chubb identified the specific basis under applicable law as to the inappropriate nature of these six requests. Further, despite taking another bite at the apple, Plaintiffs' continue to fail to provide contrary authority to the law cited by Chubb in its Opposition to the Motion to Compel. Plaintiffs have also chosen to not contest the application of the binding precedent in this District for topic numbers 4, 5, 7, 13, and 15. (Dkt. 80, PageID #:1266-1267 (topic 4), 1267-1268 (topic 5), 1268-1269 (topic 7), 1270-1272 (topic 13), and 1272-1273 (topic 15)). Similarly, Plaintiffs continue to seek impermissible testimony on the content claim in topic number 12, despite the clear Order of this Court barring

2

inquiries at this time on the contents claim. (Dkt 75; Dkt. 80, PageID # 1270). Based upon the arguments previously presented in Opposition to Plaintiffs' original Motion to Compel (Dkt. 80), Chubb respectively asks the Motion be denied with respect to topic numbers 4, 5, 7, 12, 13, and 15. With regard to the other deposition topics that are specifically mentioned in Plaintiffs' new Motion and for the other sanctions sought by Plaintiffs, Chubb offers the following response.

### A. Presentation Of A Corporate Witness For Topics 14, 18, and 19 Is Without Legal Support

Topic numbers 14, 18, and 19 continue to impermissibly seek corporate testimony with regard to the underwriting file and the renewal of Plaintiffs' insurance policy "post-incident".

#### 1. Prior To This Motion, Plaintiffs' Never Contested Chubb's Objection That Underwriting Materials Lack Relevancy To Plaintiffs' Claims

Plaintiffs' originally sought the production of the underwriting file pursuant to document request numbers 4 and 5 which asked, "Chubb's entire Underwriting File for the Insurance Claim as well as all Communications relating to or referring to the Underwriting File" (request number 4) and "All Documents and Communications relating to or referring to the underwriting of the Chubb Policy that are not contained in the Underwriting File" (request number 5). On October 18, 2021, Chubb responded to both request numbers 4 and 5 by stating,

> Objection. This request seeks documentation and information that is proprietary and confidential, and seeks documentation and information that is not likely to lead to the discovery of admissible evidence and is not proportionate to the needs of the case. Notwithstanding said objections, Defendant Chubb will produce any underwriting materials relating to or documenting the pre-loss condition of the Home.

As noted in Chubb's Opposition to the original Motion to Compel, more than 18 months have lapsed since Chubb objected to the production of documentation from the underwriting file and Plaintiffs have never contested these discovery objections nor amended their complaint to add allegations about the non-renewal/renewal of the policy. (Dkt. 80, PageID #: 1277-1278). Additionally, contrary to Local Rule 37.2, Plaintiffs have not conducted a meet and confer with

3

regard to this discovery response from 18 months ago or the objection to production of a corporate designee on topic number 14. Had they conducted a meet and confer, Chubb would have responded that the underwriting of the Policy is not at issue in this case. There is no claim for rescission or reformation. Nor is there any dispute over the interpretation of the Policy wording. Chubb covered the claim and paid Plaintiffs millions of dollars. Plaintiffs want more. That is the only dispute in this case and the Policy underwriting file and related deposition topics are entirely irrelevant. *Mei Pang v. Farmers Ins. Group*, 2014 IL App (1st) 123204, ¶ 17, 10 N.E.3d 301, 306-07; *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 3690565, at *11 (C.D. Ill. Jan. 31, 2005) (underwriting documentation not relevant when there is no claim of ambiguity). Plaintiffs' Motion posits the relevancy of Chubb's underwriting is tied to an appraisal offered by Chubb three years *prior* to this claim. This appraisal merely identifies the potential cost to replace the residence – in its entirety – would be approximately $2,165,000. However, the issue in this case is to what extent Wexlers' home was damaged due to water and alleged mold in the residence arising from the failure of a water inlet pipe occurring three years later. (Dkt. 1-1, para. 18). The extent and cost to repair damage resulting from the water pipe's failure, and not due to pre-existing structural deficiencies, code violations, and damage that was never fixed by the Wexlers, are the only issues in dispute.

On April 23, 2020, the Wexlers' submitted a Proof of Loss alleging the scope of damage and amount of loss to the residence totaled $3,302,466.50. (Ex. 1 (Proof of Loss)). In contrast, Chubb determined the scope of damage and amount of the resulting loss totaled $638,202 and paid this amount to the Wexlers. Since the parties could not agree upon the amount of loss to the residence, the amount of loss determination was submitted to appraisal according to the Policy. Recently, the appraisal panel agreed the Wexlers' scope of damage and amount of loss was excessive and, instead, determined that Chubb was only required to pay an additional $191,034.04 to account for the scope of damage and amount of loss. (Ex. 2 (Appraisal Panel's Final Building Amount of Loss Valuation)). Based upon this appraisal valuation, the appraisal panel determined that the Wexlers' building claim was overstated by 74.9%. As a result, there is no relevance to a three year old pre-

loss appraisal of the entire residence as the only issue is the scope and cost to repair actual, not theoretical, damage to only a portion, not the entire, residence.

Since an agreed upon amount of loss could not be reached between the parties, the value of the loss to repair the damage caused in this incident was submitted for determination by an appraisal panel comprised of an appraiser appointed by the Wexlers, an appraiser appointed by Chubb, and an umpire selected by the joint agreement of the appraisers of the Wexlers and Chubb. Recently, that appraisal panel confirmed the scope of damage and the amount of loss was much closer to the value determined by Chubb and its consultants and bears no resemblance to the exaggerated claims made by the Wexlers. The only remaining issue in this part of the case is whether the appraisal award conclusively establishes the amount of loss. And even assuming, arguendo, that the three year old pre-loss appraisal was relevant, neither the Deposition Topics at issue nor the Request for Production were limited to the appraisal. They were much broader seeking the underwriting file and all communications relating to the underwriting file. This is a transparent fishing expedition; the sudden need for additional documentation beyond a three year old appraisal is just an after the fact excuse to attempt to justify the trip.

Finally, as to topic numbers 18 and 19, there is no relevance to any testimony relating to the non-renewal of the Policy after the loss occurred. As Chubb previously pointed out the Policy was, in fact *renewed*. Plaintiffs' Motion fails to acknowledge this simple fact, or make any cogent argument why the renewal or non-renewal is relevant to any issue in this case even though this was highlighted in Chubb's Opposition to the original Motion to Compel. (Dkt. 80, PageID #: 1277-1278). The Wexlers, again, fail to explain where in the Complaint there are alleged any facts or causes of action arising from the renewal or non-renewal of their Policy. There are none. This is another fishing expedition intended to divert attention from the real issues in this case; namely the Wexlers' exaggerated insurance claims.

Based on the foregoing and as supported also in the undisputed arguments offered by Chubb in its Opposition to the original Motion to Compel (Dkt. 80) and incorporated into this Response,

Chubb respectfully requests that Wexlers' Motion to compel testimony on Topic Numbers 14, 18, and 19 should be denied.

### B. Plaintiffs' Motion Still Fails To Show Relevance With Regard To Historical Advertising And Marketing Materials (Topic Number 16)

Plaintiffs' demand to compel corporate testimony on eight years of marketing should be denied for the reasons detailed in Chubb's Opposition to the original Motion to Compel. (Dkt. 80, PageID #: 1274-1275). Plaintiffs' failed to counter any of the caselaw or arguments offered by Chubb in its original Opposition as to the inappropriate nature of this deposition topic. Plaintiffs' do not allege any consumer deception or any ambiguity in the Policy's language. Plaintiffs' continue to fail to explain how eight years of marketing testimony supports some fact, theory or cause of action alleged in the Complaint and is proportional to the needs of the case. Advertising and marketing materials are wholly irrelevant to the issues framed in the Complaint and, moreover, are not admissible for purposes of interpreting and applying Policy coverage. *H&L Assocs. of Kan. City, LLC v. Midwestern Indem. Co.*, No. 12-2713, 2013 WL 5774844, at *13 (D. Kan. Oct. 25, 2013); *West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 794 F.3d 666, 673 (7th Cir. 2015) (when a contract is fully integrated, it is not appropriate to consider extrinsic evidence); *BP Amoco Chemical Co. v. Flint Hills Resources, LLC*, 600 F.Supp.2d 976, 981 (N.D. Ill. 2009) (Under Illinois law, "[o]nly if the contract language is ambiguous is extrinsic evidence admissible to aid in resolving the ambiguity and ascertaining the intent of the parties"). As a result, based on the foregoing and the arguments and law previously presented for the Court's consideration (Dkt. 80, PageID #: 1273-1275), Chubb respectfully requests that Plaintiffs' Motion to Compel with regard to deposition topic number 16 be denied.

### C. Plaintiffs' Motion Still Fails To Show Relevance To Compel Testimony With Regard To Other Claimants' Claims Handling (Topic Number 17)

Plaintiffs' Motion seeking Chubb to produce a witness to testify with regard to eleven unrelated claims continues to be sought without evidence of relevance or proportionality to the

issues in dispute. Notably Plaintiffs' fail, for a second time, to dispute the legal and factual bases for the Chubb's objections to this deposition topic. (Dkt. 80, PageID # 1275-1277). On January 31, 2022, Chubb objected to written discovery on these other claims that are the subject of this particular topic. Plaintiffs never met and conferred on the objections nor moved to compel further response. Plaintiffs' do not dispute that these 11 other claimants are located in different states, involved different policy periods, different policies, different scopes of damage, different claim types, and were a time period that all predated Plaintiffs' claim. Further, Plaintiffs' continue to fail to explain how the claim of a different insured will provide relevant, admissible guidance to the jury with regard to how the extent of water and mold damage to the Wexlers' house and contents, and the resulting cost to repair that damage, is impacted by any of these unrelated claims. Finally, Plaintiffs' Motion failed to offer any rebuttal to the on-point law cited by Chubb in its original response that discovery involving unrelated claims is not relevant or appropriate. *Leeson v. State Farm Mut. Auto. Ins. Co.,* 546 N.E.2d 782 (Ill. App. 1st Div. 1989)*; Gutierrez v. State Farm Lloyds*, 2015 WL 13188353, *5 (S.D. Tex. Jan. 22, 2015); *Dade Cty. Fed. Credit Union v. Cumis Ins. Soc'y, Inc*, 2011 WL 13100237, *2 (S.D. Fla. Aug. 1, 2011); *Ramirez v. American Family Mut. Ins. Co.*, 652 N.E.2d 511 (Ind. App. 1995). (Dkt. 80, PageID #: 1276-1277). Based on the foregoing and the arguments and law previously presented for the Court's consideration on this issue (Dkt. 80, PageID #: 1275-1277), Chubb respectfully requests that Plaintiffs' Motion to Compel with regard to deposition topic number 17 be denied.

### D. Chubb's Corporate Designee Did Respond To Discovery Production Questions Even Though Such Questions Are Inappropriate Under Binding Precedent In This District

Contrary to Plaintiffs' assertions, Mr. Haessig did testify with regard to the collection efforts for document productions. (Ex. 3 (Deposition of Haessig) 34:18-24; 43:8-10; 45:4-24; 46:11-25; 47:1-3, 10-12; 50:13-20; 81:4-11). However, despite the foregoing responsive testimony, Plaintiffs' Motion seeking sanctions is not appropriate because this type of topic and

line of inquiry of a witness has been deemed inappropriate in this District as being burdensome, duplicative of other forms of less intrusive discovery, and encroaching on attorney-client and work product privileges. Plaintiffs' Motion fails to acknowledge or distinguish this binding law.

In this District, Judge Kocoras held a corporate designee topic which seeks testimony with regard to responses to interrogatories and requests to produce was unduly burdensome and inappropriate for a corporate designee deposition. *Smithkline Beecham*, 2000 WL 116082, at *9. Corporate designee deposition inquires upon issues already answered in written discovery responses are inappropriate in this District "especially true when the information sought is likely discoverable from other sources." *Id.* at *9. "As Defendants are aware, answering requests for production and interrogatories customarily is performed with the assistance of counsel. Thus, the proposed area of inquiry improperly trespasses into areas of work product and attorney-client privilege. In such cases, courts will not permit discovery implicating privilege concerns absent a showing that the information sought is not discoverable by other means. Defendants could readily have obtained the same information in a more efficient manner by propounding 'standard' interrogatories upon its opponent. By doing so, Defendants could obtain the same information with infinitely less intrusion upon privilege concerns, in a more workable format, and from the individuals who have actual knowledge of the matters at issue. In its present form, we find Defendant's Rule 30(b)(6) deposition notice overbroad, unduly burdensome, and an inefficient means through which to obtain otherwise discoverable information." *Id.* at *9-10.

Further, Judge Kocoras found asking a corporate designee to answer questions that are already answered in a discovery request, whether an interrogatory or request to produce, is not appropriate because it "improperly infringes upon matters of attorney-client privilege, work product, imposes an unduly burden, and is needlessly duplicative because Defendants will already be receiving the information" and that presenting a witness to testify as to a response provided in a discovery request is a "duplicate process [that] is unnecessary and overly

8

burdensome." Id. at *10. In this case, this line of questioning complained of by Plaintiffs was answered by Chubb in written discovery. However, Plaintiffs have elected to not raise any concerns with these written discovery answers served almost two years ago and have elected to not avail themselves of the opportunity for a meet and confer conference.

Finally, attached is Chubb's response to interrogatory number two which sought details about the thirty individuals mentioned in Plaintiffs' Motion. (Ex. 4 (Chubb's January 2022 Response to Interrogatories)). As reflected in the discovery response, the dates of activity for these individuals was noted – with some only having one interaction with the claim or others, such as the handling adjuster, being over a longer period of time. However, for each of these individuals, there was a disclosure of responsive documents identified and produced and the documentation provided by Chubb is searchable. Absent from Plaintiffs' Motion is acknowledgment that in this District a broad request for searching of emails of employees is inappropriate and satisfied, instead, by producing the emails of the relevant custodians involved in the dispute. *Maenza v. Uchicago Argonne LLC*, No. 18 C 4328, 2019 WL 13276114, at * 2 (N.D. Ill. May 15, 2019). Also absent from Plaintiffs' Motion is an acknowledgment the relevant custodian's emails have been produced, including the handling claim's adjusters.

As a result, based on the foregoing, Chubb respectfully requests that Plaintiffs' Motion to Compel and for sanctions with regard to deposition topic number 10 be denied.

> **E. Chubb Has Already Agreed To Produce A Witness With Regard To Contracts Between Chubb And Third Parties (Topic Number 22)**

On May 17, 2023, during a meet and confer call held *prior* to the filing of this Motion, Chubb already agreed to produce a corporate designee with regard to the contracts that were in place at the time of this claim amongst Chubb and several third parties. On May 26, 2023, Chubb supplemented its document production to include contracts that were identified by Mr. Haessig in his testimony. (Ex. 6 – May 26, 2023, supplemental disclosure). For an unknown

reason, though, Plaintiffs' Motion failed to disclose to the Court that an agreement to disclose these newly identified documents and to present testimony with regard to the contracts was reached more than thirty days ago as part of the meet and confer conference. As a result, the Motion with respect to Topic Number 22 is moot and Plaintiffs' Motion to Compel and for sanctions with regard to deposition topic number 22 should be denied.

### F. Questions Not Answered During The Deposition Have Been Found To Be Inappropriate In This District And Were Subject To A Pending Motion Before This Court

Plaintiffs' Motion seeks to impose sanctions due to Mr. Haessig not answering certain questions during his corporate designee deposition. During the deposition, though, Plaintiffs' counsel acknowledged Mr. Haessig was appearing only in his capacity as a corporate designee to answer questions on certain topics and not in a personal capacity as a fact witness. (Ex. 3, 16:1-25; 17:1-15). Nevertheless, Plaintiffs' Motion fails to acknowledge that some of the questions identified in Plaintiffs' Motion have been found to be inappropriate to be asked in a corporate designee deposition in this District and some questions invaded the province of this Court as there was a *pending* ruling from this Court on Chubb's objections.

For instance, Plaintiffs' argue that it was not appropriate for Mr. Haessig to not answer questions that related to "whether Chubb is subject to any regulations in Illinois that dictate what types of documents must be kept in an insured's claim file." However, this line of questioning was subject to a pending decision by this Court at the time of Mr. Haessig's deposition based upon the objection of Chubb to deposition topic number 7. (Dkt. 80, PageID #: 1268-1270). Despite Plaintiffs' counsel knowing this was an issue to be ruled upon by the Court, Plaintiffs' counsel elected to attempt to inquire on an issue that was awaiting the Court's ruling. That this particular line of questioning was pending a decision by the Court was even pointed out to Plaintiffs' counsel during the deposition. (Ex. 3, 65:14-19, 66:1-3). It was only *after* this

10

deposition proceeded, that Plaintiffs' withdrew its request for the Court to determine the merits of Chubb's objections to certain deposition topics.

Further, Plaintiffs' Motion argues that not answering hypothetical questions about an adjuster's obligations under a standard of care was not appropriate. However, Plaintiffs' Motion fails to distinguish why the binding guidance offered by Magistrate Judge Schenkier's decision in *Federal Deposit Ins. Corp. v. Giancola*, No. 13 C 3230, 2015 WL 5559804, at *4 (N.D. Ill. Sept. 18, 2015), which held it was inappropriate to ask a corporate designee to testify as to expert opinions or conclusions, including adherence to a standard of care, does not mandate denial of Plaintiffs' Motion.

Despite the assertions of Plaintiffs in the Motion, Mr. Haessig did provide testimony with regard to his responsibilities as a claims manager. (Ex. 3, 9:2-6; 36:4-25; 37:1-18)

Similarly, Plaintiffs' claim that Mr. Haessig did not offer testimony about whether an adjuster can communicate with an insured via a messaging app is incorrect, as Mr. Haessig did provide testimony on this issue in the testimony immediately after the end of the citation offered by Plaintiffs. (Ex. 3, 74:18-25; 75:1-25; 76:1-18).

Finally, it is noteworthy that very early in the deposition, Plaintiffs' counsel offered to send to Chubb's counsel caselaw that supported its position that its questions were appropriate during the deposition for consideration and discussion, but Plaintiffs' counsel never submitted that support for consideration so that the dispute might have been resolved in real time. (Ex. 3, 39:12-16). Further, Plaintiffs' counsel never asked for the parties to bring this dispute to the Court's attention during the deposition for potential resolution.

As a result, since the questions identified in the Motion were subject to a pending decision by this Court at the time of the deposition, binding caselaw confirms inquiries on standards of care and opinions are not appropriate for corporate designee depositions, and the

witness did provide testimony on the questions raised in the Motion, Chubb respectfully asks that this Court deny Plaintiffs' Motion and request for sanctions.

### G. Deposition Topic Number 6 Did Not Involve Queries About Text Messaging

Corporate designee topic number 6 asked for the production of a witness with regard to "CHUBB's training of CHUBB claims personnel who are responsible for handling, investigating, and adjusting homeowners' residential water damage property insurance claims regarding the investigation, repair, and replacement of residential property damaged by water, mitigation of water damage, and the remediation of mold damage, whether pursuant to any claims or adjustment manuals or other sources of standards or practices." In response to this request, Chubb designated Mr. Walter Haessig to testify on this topic. However, as obvious from the topic description chosen by Plaintiffs' counsel, there is no indication that this topic would involve queries about text messages. Instead, topic number 6 specifically is focused - and limited - to only the "training" offered by Chubb to the "claims personnel who are responsible for handling, investigating, and adjusting homeowners' residential water damage property insurance claims regarding the investigation, repair, and replacement of residential property damaged by water, mitigation of water damage, and the remediation of mold damage, whether pursuant to any claims or adjustment manuals or other sources of standards or practices."

When asked about text messaging, Plaintiffs' counsel was asked by Mr. Haessig if there was any documentation that could be shown to the witness that might refresh his memory or recollection with regard to whether text messages were requested in discovery. (Ex. 3, 79:12-14). In response, Plaintiffs' counsel remarked, "I'll come back to that only because I don't have the document request definitions in front of me so I'll come back to that. That will help." (Ex. 3, 79:15-17). Significantly, though, Plaintiffs' counsel never came back to that issue and never showed any documentation to the witness as requested. As a result, the lack of a response by the witness was not due to his preparation, but instead the decision of Plaintiffs' counsel to not provide the witness with a requested

12

document to aide in their testimony – something which Plaintiffs' counsel admitted would "help" the witness provide testimony on the issue.

Finally, at this time, Plaintiffs' have failed to establish all five requirements to warrant the imposition of sanctions with regard to text messages. First, Plaintiffs have not taken the testimony of any witnesses, whether the Wexlers or from Chubb, to confirm there were text messages exchanged that were not produced in discovery. Under the rationale offered by Plaintiffs, Chubb is equally entitled to a spoliation inference against the Wexlers. While the Wexlers have produced at least one text message, Exhibit M to the Motion, if there were any other text messages exchanged with Chubb that the Wexlers did not produce, then the Wexlers are equally susceptible to a spoliation inference sanction they seek against Chubb. Further, Plaintiffs have not presented any evidence there were any text messages exchanged *after* there was anticipated or actual litigation.

In support of its Motion for Sanctions, Plaintiffs' rely upon *Worldpay, US, Inc. v. Haydon*, No. 17-cv-4179, 2018 WL 5977926 (N.D. Ill. Nov. 14, 2018). However, Plaintiffs' recitation of the holding of the case is incomplete and its reliance to assert that imposition of sanctions against Chubb is automatic based upon five principles is misleading and a contorted reading of the case's opinion. The *Worldpay* court noted the failure to preserve ESI *may* become an issue if five prerequisites are *all* satisfied: 1) the information must be classified as ESI; 2) there "must be anticipated or actual litigation", 3) because of the anticipated or actual litigation the ESI should have been preserved, 4) the ESI must have been lost because the party failed to take reasonable steps to preserve the ESI, and 5) the lost ESI must not be capable of being restored or replaced." *Id.* at *3. Thereafter, the *Worldpay* court noted that "If all of those prerequisites are met, and the Court also determines that one party was prejudiced from the loss of the information, the court 'may order measures no greater than necessary to cure the prejudice.' In addition, if the Court concludes that the offending party acted 'with the intent to deprive another party of the information's use in the litigation,' then it may impose more several sanctions. These may include presuming that the lost information was

13

unfavorable to the party, instructing a jury that it may or must make that same assumption, and dismissing the action or entering a default judgment." *Id.* at *4. (citations omitted).

The drastic nature of the request for sanctions sought by the Wexlers is belied by the fact that the sole case relied upon, *Worldpay*, ultimately held that an adverse inference instruction was not appropriate. *Id.* at *5. The defendant in *Worldpay* elected to not preserve its email domain *after* it received a preservation request and a lawsuit was filed. *Id.* at *1. Despite the defendant's decision to not preserve ESI that was specifically requested and after a lawsuit was filed, the court still determined there was insufficient merit to impose a sanction of an adverse instruction because of the lack of evidence of prejudice from the lack of the ESI and there was no evidence of the requisite intent of bad faith and a desire to deprive another party of the ESI specifically for use in any litigation was not present. *Id.* Even though the facts of this case are inapposite to those presented in *Worldpay*, the guidance offered by the court's decision is still instructive and appropriate for guidance for this Court in response to Plaintiffs' demand for sanctions.

First, Plaintiffs' Motion does not satisfy the five mandatory prerequisites. Plaintiffs' have not presented facts as to when there was "actual or anticipated litigation." Plaintiffs' filed this lawsuit on January 29, 2021. (Dkt. 1-1). Plaintiffs' Motion does not present any evidence there were any text messages generated after January 29, 2021. Plaintiffs' Motion similarly does not provide any evidence as to when litigation was anticipated, but the fact that litigation counsel were retained by the Wexlers and that suit was actually filed was not disclosed to Chubb until March 11, 2023, according to a March 10, 2021, email issued by Wexlers' counsel Andrew Plunkett and the parties had not even moved toward resolution through appraisal until demanded by Chubb. (Ex. 5 (December 23, 2020, Letter from Chubb to Plaintiffs)). Plaintiffs' Motion, once again, does not present any evidence that there were any text message generated after either December 23, 2020, or March 11, 2021. Finally, despite not satisfying *all* five mandatory prerequisites, Plaintiffs' Motion also fails to show the *mandatory* evidence of prejudice and bad faith requisite intent to deprive the Wexlers' of ESI specifically for litigation.

14

As a result, Chubb respectfully suggests this Court should follow the guidance of the not only the case relied upon by Plaintiffs, but also the law of this District which Plaintiffs elected to not identify, and enter an Order denying Plaintiffs' Motion and the request for sanctions.

### H. Plaintiffs' Request For Sanctions Should Be Denied

As detailed above, Plaintiffs' elected to proceed with the deposition of Mr. Haessig despite knowing a ruling on the objections of Chubb to certain deposition topics was pending and then elected to attempt to ask questions on the topics that were under the Court's advisement. Although Plaintiffs' allege they incurred time to prepare exhibits and questions that were not asked, Chubb has already agreed to produce a corporate witness on certain topics as part of a meet and confer conference. As a result, in a second corporate designee deposition Plaintiffs will not incur any new costs associated with the second deposition as the time incurred to prepare the questions was incurred before the first deposition occurred and no costs were incurred for the first or any subsequent deposition as the deposition proceeded via by remote means, instead of being in-person out of state. As a result, Plaintiffs' request for sanctions for fees and expenses incurred for either the first corporate designee deposition or the agreed-upon second deposition should be denied.

## CONCLUSION

Consistent with the foregoing, Chubb respectfully requests the following relief:

1. The denial of Plaintiffs' Motion to Compel with regard to topic numbers 4, 5, 7, 12, 13, 15, 16, 17, 18, and 19,

2. Entry of a Protective Order that Chubb does not have to designate a corporate designee with regard to topic numbers 4, 5, 7, 12, 13, 15, 16, 17, 18, and 19,

3. The denial of Plaintiffs' request for spoliation sanctions, and

4. The denial of Plaintiffs' request for attorney fees and costs associated with the corporate designee deposition.

Respectfully submitted,

/s/ *Michael S. Errera*
Matthew S. Ponzi  (mponzi@fgppr.com)
Michael S. Errera (merrera@fgppr.com)
Foran Glennon Palandech Ponzi & Rudloff, P.C.
222 North LaSalle Street, Suite 1400
Chicago, Illinois 60601
Tel:  (312) 863-5000
Fax: (312) 863-5099
*Attorneys for Defendant Chubb National Insurance Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 16, 2023, a copy of the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

| | |
|---|---|
| Paul H. Tzur | Thomas A. Gamache |
| Seth D. Lamden | Daniel J. Offenbach |
| BLANK ROME LLP | LEAHY, EISENBERG & FRAENKEL, LTD. |
| 444 W. Lake Street, Suite 1650 | 33 West Monroe St., Suite 1100 |
| Chicago, IL 60606 | Chicago, Illinois 60603 |
| ptzur@blankrome.com | Telephone: (312) 368-4554 |
| slamden@blankrome.com | tag@lefltd.com |
| *Counsel for Plaintiff* | djo@lefltd.com |
| | *Counsel for BELFOR* |

                                            */s:/ Michael S. Errera*
                                            Michael S. Errera (merrera@fgppr.com)