UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY WEXLER and KENNETH WEXLER., | ) |
| Plaintiffs, | ) |
| | ) No. 21-cv-2543 |
| v. | ) |
| | ) Magistrate Judge Keri L. Holleb Hotaling |
| CHUBB NATIONAL INSURANCE CO., and BELFOR USA GROUP, INC, | ) |
| Defendants, | ) |
| and | ) |
| CHUBB NATIONAL INSURANCE CO., | ) |
| Counterclaim Plaintiff, | ) |
| v. | ) |
| AMY WEXLER and KENNETH WEXLER., | ) |
| Counterclaim Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Amy Wexler and Kenneth Wexler (collectively, "Plaintiffs" or "the Wexlers") filed their Second Amended Complaint ("SAC") in this matter on February 20, 2024 [Dkt. 150]. Defendant Chubb National Insurance Company Co. ("Chubb") has filed a Motion to Dismiss select counts of the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. 156], as has Defendant Belfor USA Group Inc. ("Belfor") [Dkt. 157]. Having been fully briefed on the issues, the Court grants both of Defendants' motions, as detailed below. Accordingly, Counts VII and X of the SAC are dismissed with prejudice. Similarly, Plaintiffs' request for punitive damages also is dismissed.

I. **Factual Background**

The Wexlers own a home in Glencoe, Illinois ("the Home"). [SAC ¶ 2.] Between September 1, 2018, and September 1, 2019, the Home was insured under a Masterpiece insurance policy issued

by Chubb. [SAC ¶ 20.] The policy required Chubb to provide Plaintiffs with "coverage against all risk of physical loss to [the Home and personal property] unless stated otherwise or an exclusion applies." [Dkt. 150-1, p. B-1; *see also* Dkt. 50, p. 1.] The policy also provided $10,000 in coverage for "mold remediation expenses," which included, *inter alia*, costs incurred for "developing a mold remediation plan," "implementing the mold remediation plan including the clean up, removal, containment, treatment, or disposal of mold," and "repairing or replacing covered property damaged or removed solely due to mold." [Dkt. 150-1, p. B-10.]

During a thirty-six-hour period between January 29 and January 31, 2019, the Chicago metropolitan area experienced a temperature drop from 32°F to -20°F. [SAC ¶ 24.] Plaintiffs allege that, due to this temperature fluctuation, water service pipes at the Home burst and released water on February 1, causing damage to their property. [*Id*. ¶ 25.] After the water damage was discovered, Plaintiffs filed a claim with Chubb. [*Id*. ¶¶ 26-27.] On February 1, Amy Wexler spoke with a representative of Belfor, a property remediation company that was a preferred contractor for Chubb, who offered to send someone to inspect the Home the next day, February 2. [*Id*. ¶¶ 33-34.] When the Belfor representative visited the Home on February 2, he told Plaintiffs the Home had incurred extensive water damage, certain areas of the Home "needed to be demolished in order to dry it out properly," and "it would be important to dry the house quickly because 'mold starts forming in 24-48 hours.'" [*Id*. ¶ 39.] Nevertheless, Plaintiffs allege that Chubb and Belfor "negligently and willfully allowed mold to form and then spread throughout the Home and its contents." [*Id*. ¶ 3.]

On February 6, 2019, a Belfor representative advised Plaintiffs that, although Chubb had approved the demolition and removal of some wet walls, ceilings, and floors, Chubb had also instructed Belfor to leave many wet areas "as-is." [*Id*. ¶ 45.] On February 7, an air-quality expert retained by Chubb tested the air in the Home and found "two dangerous species of airborne mold" in the Home. [*Id*. ¶¶ 53.] Also on February 7, Amy Wexler executed a Work Authorization, which

authorized Belfor "to effect repairs [at the Home] on an Emergency Basis" and which entitled Belfor to recover from Chubb for its work (or if Plaintiffs' insurance claim was denied, Plaintiffs would be "personally liable for all costs of services performed"). [Dkt. 105-2.]

Shortly thereafter, Chubb instructed Plaintiffs to vacate the Home. [SAC ¶¶ 58, 107.] Plaintiffs allege that, as of February 12, 2019, "Chubb and Belfor exercised complete care and control of all remediation work performed at the Home." [*Id*. ¶ 61.] According to Plaintiffs, "in an effort to limit the amount of money Chubb needed to pay to remediate the Wexlers' Home[,]" "Chubb breached the Policy by obstructing and failing to implement the EGSL Mold Remediation Protocol or by failing to develop and implement any other effective mold remediation plan after mold was discovered at the Home and by failing to supervise Belfor's work at the Home." [*Id*. ¶¶ 46, 106.]

Plaintiffs hired an architect, structural engineer, and contractor to determine what repairs were needed before they could safely return to the Home. [*Id*. ¶ 78.] These consultants recommended the Home be demolished and replaced in its entirety. [*Id*.]. After Plaintiffs sent these recommendations to Chubb, Chubb then retained its own contractors and a mold expert to assess the situation. [*Id*. ¶¶ 81-82.] Plaintiffs aver that Chubb's analysts were "hired by Chubb to give a low estimate to support Chubb's economic interest in paying for less than the full work scope required to remediate" the Home. [*Id*. ¶ 81.] Finally, Plaintiffs allege that Chubb now wrongfully contends its exposure "is limited by a $10,000 mold sublimit in the policy" despite initially considering the claim a covered water damage claim and paying out thousands of dollars to remediate the mold and nearly one million dollars in replacement costs for Plaintiffs' personal property. [*Id*. ¶¶ 9, 84.]

In January 2021, plaintiffs filed this suit in the Circuit Court of Cook County, Illinois, and Defendants later removed the case to this Court based on diversity jurisdiction. [Dkt. 1.] The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of Illinois and Defendants are citizens of Colorado, Indiana, Michigan, and New Jersey. [Dkt. 1-1.] On

September 7, 2021, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt. 29.]

On January 31, 2022, Magistrate Judge Heather K. McShain, to whom this case then was assigned, dismissed Count III (breach of fiduciary duty claim against Chubb), Count IV (consumer fraud claim against Chubb), Count V (breach of fiduciary duty claim against Belfor), Count VI (negligence claim against Chubb), and Count VII (negligence claim against Belfor) of Plaintiffs' Complaint, with prejudice. [Dkt. 50.] She also struck Plaintiffs' request for punitive damages. [*Id.*]

Plaintiffs filed their First Amended Complaint on March 31, 2022 [Dkt. 59]. Defendants never answered Plaintiffs' First Amended Complaint because the Court had issued a stay in the case pending completion of an appraisal [Dkt. 57]. The Court lifted the stay on January 31, 2024, and Plaintiffs filed their Second Amended Complaint on February 20, 2024. [Dkts. 147, 150.] Both Chubb and Belfor now seek to dismiss portions of that Second Amended Complaint. [Dkts. 156, 157.] Specifically, Defendants seek to dismiss Count VII for tortious interference with a contract against Chubb; and Count X alleging civil conspiracy against Chubb and Belfor.[1]

## II. Legal Standard

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits." *Souza v. Erie Ins. Co.*, No. 22-cv-3744, 2023 WL 4762712, at *2 (N.D. Ill. July 25, 2023) (citing, *inter alia*, Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Belfor originally sought to dismiss the negligence claim against it (Count V) but has since withdrawn those arguments. [Dkt. 162, n. 1.]

678 (2009). "The plausibility standard…asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In ruling on a motion to dismiss, a court accepts all well-pleaded facts in the complaint as true and "draw[s] all reasonable inferences in the plaintiff's favor." *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018).

When a federal court exercises diversity jurisdiction, the court "look[s] to the choice-of-law rules of the forum state to determine which state's law applies to the issues before it." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (internal quotation marks omitted). "Under Illinois choice-of-law rules, forum law is applied unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Id*. (internal quotation marks omitted). Because there is no dispute that Illinois law controls here, the Court evaluates the plausibility of plaintiffs' claims under Illinois substantive law. *See Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir. 1992) (district court "will apply the substantive law of the forum state if the case is a diversity case and neither party argues choice of law").

### III. Discussion

#### a. Count VII – Tortious Interference with Contract Against Chubb

The Wexlers originally brought a claim for tortious interference with contract against Chubb [Dkt. 1-1 (Count X)], which Chubb answered [Dkt. 7]. The Wexlers have reasserted that claim in the SAC. [Dkt. 150 (Count VII).] Chubb now seeks to dismiss the Wexlers' tortious interference claim, so first the Court must address whether Chubb somehow waived its "failure to state a claim" defense by answering the original complaint. Contrary to Plaintiffs' argument, a motion to dismiss a count in an amended complaint that was previously answered is not subject to waiver. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement."); *About U.S. Real Estate, Inc. v. Burnley*, No. 14-

cv-4471, 2015 WL 3397025, at *6 (N.D. Ill. May 26, 2015) (dismissal of a count previously answered is permissible because failure to state a claim is not waivable).

A prima facie claim of tortious interference with contract requires proof of five elements: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by a third party; and (5) damages." *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.,* No. 12-cv-3530, 2012 WL 4932845, at *5 (N.D. Ill. Oct. 16, 2012) (quoting *Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, 661 F.3d 959, 968 (7th Cir. 2011)).

The alleged contract at issue in Count VII is the Work Authorization between Plaintiffs and their remediation contractor, co-defendant Belfor. [Dkt. 105-2.] The second element of a tortious interference claim – that that Defendant Chubb was aware of the Work Authorization and its terms as executed by Plaintiffs and Belfor – is not met here. Plaintiffs offer no support, other than a self-serving conclusory allegation, that Chubb was aware of the contract between Plaintiffs and Belfor. [SAC ¶ 157.] Conclusory allegations are not sufficient to support a claim; without the requisite factual support, this claim is subject to dismissal. *Pillows v. Cook County Recorder of Deeds Office*, No. 18-cv-7497, 2019 WL 2524149, at *3 (N.D. Ill. June 18, 2019); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2008). Here, Plaintiffs fail to allege or provide any support that Chubb was provided with a copy of the Work Authorization between Plaintiffs and Belfor, or that Chubb was aware of the contract's provisions, which is fatal to Plaintiffs' assertion of a tortious interference claim. *In re Douglas Dunhill, Inc.*, 22 B.R. 953, 957 (N.D. Ill. 1982) (failure to establish that a party knew of the contract or of the contract's terms subjects a tortious interference claim's dismissal); *Brinley Holdings, Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 540 (N.D. Ill. 2022) (absent evidence the offending party had knowledge of the contract and its terms, a claim must be dismissed).

Plaintiffs have failed to allege actual knowledge (or even "constructive" knowledge as in the *D 56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 916 (N.D. Ill. 1997) case relied upon by Plaintiffs) by Chubb of the contract terms or provisions between Plaintiffs and Belfor – which is necessary to support this liability theory. *Brinley*, 580 F. Supp. 3d at 542. Plaintiffs only assert Chubb was provided a copy of the mold inspection report, which *did not* contain the contract between Plaintiffs and Belfor. If a copy of the contract had been given to Chubb, Plaintiffs most certainly would have made this assertion in the SAC (or at least in their opposition brief, Dkt. 160).

Next, the third element of a claim for tortious interference with contract requires a plaintiff to establish the intentional and unjustified inducement of a breach, which "requires some active persuasion, encouragement, or inciting" on the part of the defendant. *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, No. 12-cv-3530, 2012 WL 4932845, at *6 (N.D. Ill. Oct. 16, 2012) (quoting *In re Estate of Albergo*, 275 Ill. App. 3d 439, 446 (3d Dist. 1995). A party that only negligently interferes with a contract is insufficient to support a tortious interference claim. *Great Cent. Ins. Co. v. Ins. Servs. Office, Inc.*, 74 F.3d 778, 785 (7th Cir. 1996); *Santucci Cons. Co. v. Baxter & Woodman, Inc.*, 151 Ill. App. 3d 547, 552 (3d Dist. 1986). *Pomerantz v. Int'l Hotel Co., LLC*, 359 F. Supp. 3d 570, 584 (N.D. Ill. 2019) ("[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy."); *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (2d Dist. 1994). Count VII of the SAC does not allege that Chubb intended for Belfor to breach its contract with the Plaintiffs or that Chubb suggested to Belfor it should breach its contract with the Plaintiffs. Merely alleging interference with compliance of a contract is insufficient to support the third element of this claim and warrants the dismissal of a tortious interference count. *Id*. Absent any allegation Chubb intended Belfor to breach its contract with the Plaintiffs, and that Chubb intended to induce the breach of the contract by Belfor, Plaintiffs fail to support an actionable tortious interference claim. *Id*.

Although Plaintiffs use the word "intentional" in an effort to meet their burden of proof in the SAC, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Solutions Team v. Oak Street Health, MSO, LLC*, No. 17-cv-1879, 2020 WL 5630468, at *4 (N.D. Ill. Sept. 21, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted)). Plaintiffs have failed to offer support for the premise that Chubb actively persuaded or encouraged Belfor to breach its contract with the Plaintiffs. *Sysco Corp. v. Katz*, No. 13-cv-5477, 2013 WL 5519411, at *7 (N.D. Ill. Oct. 3. 2013); *Solutions Team*, 2020 WL 5630468, at *9. The simple assertion in a complaint of a conclusory statement, without support for the alleged factual assertion, is insufficient to allow the Court to sustain Plaintiffs' claim for tortious interference. *L. Offs. of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083, ¶ 39; *Skopp v. First Fed. Savings of Wilmette*, 189 Ill. App. 3d 440, 449 (3d Dist. 1989) ("A bare assertion that an act was done maliciously or with a certain purpose or intent is insufficient where there is no statement of facts that shows such purpose or intent"). The use of the word "intentional" [SAC ¶ 158], without a factual underpinning, cannot save the Count VII of the SAC from dismissal.

Finally, and apart from the individual elements of a tortious interference claim, the mere restatement of facts supporting Plaintiffs' breach of contract and bad faith claim result in pre-emption of other extracontractual remedies or liability theories under Section 155 of the Illinois Insurance Code, 215 ILCS § 155 ("Section 155") (as Judge McShain aptly recognized in her January 31, 2022 Memorandum Opinion and Order dismissing certain of Plaintiffs' claims [Dkt. 50, p. 6]). Under the preemption doctrine, an insured is afforded an extracontractual remedy against an insurer for alleged bad faith, but the insured is then limited to only pursuit of a Section 155 claim while other extracontractual remedies or liability theories are barred. *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 526 (2d Dist. 1996); *Kallemeyn Collision Ctr., Inc. v. Standard Fire Ins. Co.*, 628 F. Supp. 3d 769, 779-80 (N.D. Ill. 2022); *W. Howard Corp. v. Indian Harbor Ins. Co.*, No. 10-cv-7857, 2011 WL

8

2582353, at *5 (N.D. Ill. Mar. 5, 2018) (dismissal of alternative tort claims appropriate as remedy provided for essentially a failure to pay claim is offered through a breach of contract claim and Section 155 claim); *Kush v. Am. States Ins. Co.*, 853 F.2d 1380, 1385 (7th Cir. 1988) (if alleged conduct is within the broad scope of Section 155, any alternative claim should be dismissed); *Creation Supply, Inc. v. Hahn*, 19-cv-6063, 2020 WL 4815905, at *7-8 (N.D. Ill. Aug. 19, 2020) (dismissal appropriate when factual basis of claim is premised on essentially same facts alleged in support of a Section 155 claim). Because the allegations Plaintiffs use to support their claims of breach of contract and Section 155 bad faith employ the exact same underlying conduct used to support their Count VII tortious interference with contract claim [SAC ¶ 155, 158], Count VII is preempted.

Plaintiffs' SAC fails to establish a valid claim for tortious interference with a contract and, therefore, Chubb's motion to dismiss this claim is granted, with prejudice.

### b. Count X - Civil Conspiracy Against Chubb and Belfor

In Count X of the SAC, Plaintiffs allege a claim of civil conspiracy against both Chubb and Belfor. [SAC, Count X.] In this new count, Plaintiffs allege that Belfor agreed its water and mold remediation work would be performed as directed by Chubb and that Chubb sought to limit the scope of Belfor's work in order to minimize the payments to Belfor. [*Id.* at ¶ 180-85.]

Under a civil conspiracy theory, there must be an agreement by two parties to knowingly and voluntarily participate in a common scheme to perform an unlawful act or perform a lawful act in an unlawful manner. *Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1028-29 (N.D. Ill. 2007). Specifically, a party is "required to allege with specific facts an agreement between [two parties] and a tortious act committed in furtherance of that agreement." *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 316 Ill.App.3d 416, 432 (Ill. App. Ct. 2000); *Gros*, 525 F. Supp. 2d at 1028-29; *Nat'l All. of Wound Care, Inc. v. Morgan*, 2020 IL App (3d) 190691, ¶ 49; *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022); *see also Windy City Metal Fabricators & Supply, Inc.*

*v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("It is well settled that a federal court sitting in diversity applies federal pleading requirements 'even when the claim pleaded arises under state rather than federal law.'"); *Tamayo v. Blagojevich*, 326 F.3d 1074, 1084 (7th Cir. 2008) (federal pleading standard requires allegations that rise above speculative basis).

In this case, the Court finds Plaintiffs offer only conclusory allegations and no factual support to show the existence of an agreement between Belfor and Chubb. [SAC ¶ 182, 184.] While the SAC alleges Belfor may have been negligent in failing to begin work right away or to promptly address the condition of the Home before the Work Authorization was signed (*see*, *e.g.*, SAC ¶ 59), Plaintiffs do not allege the delays were caused by some agreement with Chubb. To the contrary, Belfor's working relationship with Chubb did not begin until after the execution of the Work Authorization, which entitled Belfor to recover from Chubb for its work. [Dkt. 105-2.] The SAC does not offer any facts to establish when a wrongful agreement between Chubb and Belfor was supposedly reached, who was involved in making the alleged agreement, or what the terms of the agreement were. There is no allegation that any action Belfor took beyond the scope of the Work Authorization was taken in coordination with Chubb. "It is insufficient to merely conclude that the defendants agreed with others to achieve an ill-purpose" – proof of the agreement is necessary and, absent such proof, a civil conspiracy claim must be dismissed. *Ickert v. Cougar Package Designers, Inc.*, 2017 IL App (1st) 151975-U, ¶ 29; *Indeck*, 316 Ill. App. 3d at 432 ("[c]haracterizing a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss."); *Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 23 (2d Dist. 1998) ("mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss" and conclusory allegations a conspiracy occurred, without any factual support, must result in dismissal of civil conspiracy claim). Negligence cannot be what renders the agreement "wrongful" in the first place. *Miller v. Hecox*, 2012 IL App (2d) 110546, ¶ 43. Likewise, parallel conduct by two parties is insufficient to support a civil conspiracy claim.

10

*Burgess v. Abex Corp. ex. rel. Pneumo Abex Corp.*, 311 Ill. App. 3d 900, 902 (Ill. App. Ct. 2000). The Court finds the "factual allegations" of Count X of the SAC are unsupported, conclusory allegations that fail to satisfy the elements of a civil conspiracy claim between Chubb and Belfor.

Finally, a claim for civil conspiracy cannot be premised upon the breach of a contract, as a breach of contract is not a tort. *Gros*, 525 F. Supp. 2d at 1028-29. The absence of an underlying tort committed by a party renders a civil conspiracy claim subject to dismissal. *Id*. at 1027; *Sonrai Sys., LLC v. Waste Connections, Inc*., 658 F. Supp. 3d 604, 612 (N.D. Ill. 2023). All underlying tort claims against Chubb were dismissed with prejudice by Judge McShain with the exception of the tortious interference claim (discussed and dismissed by the Court in Section III(a), *supra*). [Dkt. 50.] Now, with the dismissal of Count VII (tortious interference claim), *supra*, no tort claims remain. The lack of an underlying tort-based claim is fatal to a civil conspiracy claim as to both Chubb and Belfor and, thus, Count X is also dismissed with prejudice.

      **c. Punitive Damages**

Finally, the Court reaches Plaintiffs' request for punitive damages. The Court strikes this request because, as stated by Judge McShain [Dkt. 50], "punitive damages are not available in actions for breach of contract because a party suing for breach of contract is entitled only to the benefit of his bargain and the purpose of awarding damages is to place the injured party in the position he would have been had it not been for the breach." *Cruthis v. Firstar Bank, N.A*., 354 Ill. App. 3d 1122, 1131 (3d Dist. 2004). The only exception to this rule is "where the breach constitutes an independent tort." *Id*. The SAC does not state a cause of action that would entitle Plaintiffs to recover punitive damages.

**IV. Conclusion**

In conclusion, Chubb National Insurance Company Co.'s partial motion to dismiss [Dkt. 156] and Belfor USA Group Inc.'s partial motion to dismiss [Dkt. 157] are granted; Counts VII and X of the SAC [Dkt. 150] are dismissed with prejudice. Plaintiffs' request for punitive damages also is

11

dismissed. Any further requests to amend the pleadings must be made by July 30, 2024. To be clear, the Court is not soliciting any further amendments, and notes it is disinclined to allow the same in this 2021 case. But in no case will the Court entertain a motion for leave to amend the complaint after July 30, 2024. Any such motion must be accompanied by a copy of the proposed amended complaint, a redline version showing changes from the SAC, and a brief of no more than five pages explaining the necessity of any proposed amendments and how those amendments cure the deficiencies of the prior complaints. *See, e.g., Gutierrez v. Wemagine.AI LLP*, No. 21-cv-5702, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022); *see also* Dkt. 50, n. 6.

**ENTERED: May 30, 2024**

                                                Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge