UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY WEXLER and KENNETH WEXLER., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CHUBB NATIONAL INSURANCE CO., ) <br> and BELFOR USA GROUP, INC, ) <br> ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> CHUBB NATIONAL INSURANCE CO., ) <br> ) <br> Counterclaim Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMY WEXLER and KENNETH WEXLER., ) <br> ) <br> Counterclaim Defendants. ) | No. 21-cv-2543 <br><br> Magistrate Judge Keri L. Holleb Hotaling |

## MEMORANDUM OPINION AND ORDER

On May 30, 2024, the Court dismissed Counts VII and X of the Second Amended Complaint ("SAC") filed by Plaintiffs Amy Wexler and Kenneth Wexler (collectively, "Plaintiffs" or "the Wexlers") [Dkt. 171]. On August 29, 2024, the Court clarified that these two Counts were dismissed without prejudice [Dkt. 191]. The Court also noted that while it disfavored another motion to amend the pleadings at this late stage of the litigation, Plaintiffs were allowed to seek such leave to amend their complaint via motion that "explain[ed] the necessity of any proposed amendments and how those amendments cure the deficiencies of the prior complaints" and provided the Court with "a redline version showing changes from the SAC" [*Id*]. On September 24, 2024, the Wexlers filed their motion for leave to file their proposed Third Amended Complaint ("TAC") [Dkt. 199]. Oppositions to that motion have been filed by both Defendant Chubb National Insurance Company Co. ("Chubb")

[Dkt. 211] and Defendant Belfor USA Group Inc. ("Belfor") [Dkt. 212]. Having been fully briefed on the issues, the Wexlers' Motion for Leave to File Third Amended Complaint [Dkt. 199] is hereby DENIED for the reasons set forth below.

## I. Legal Standard

The right to amend a complaint is not absolute, *In re Ameritech Corp.*, 188 F.R.D. 280, 282 (N.D. Ill. 1999), but is discretionary. Fed. R. Civ. P. 15(a)(2). The Court has "broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Standard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011); *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008); *Holmes v. DeJoy*, No. 22-cv-1383, 2023 WL 3792409, at *2 (N.D. Ill. June 2, 2023); *Craigville Telephone Co. v. T-Mobile USA, Inc.*, No. 19-cv-7190, 2023 WL 3727916, at 3-4 (N.D. Ill. May 30, 2023) (declining amendment of complaint due to the age of the case and the election of moving party to not cite any discovery obtained over the years in support of proposed amendments); *Porch v. Univ. of Ill. at Chi., Sch. of Med.*, No. 21-cv-3848, 2023 WL 5058095, at *2 (N.D. Ill. July 7, 2023) (denial of leave to file amended complaint appropriate where court considered both redline and clean versions of proposed amended complaint and the factual allegations presented for alleged support, and rejected those factual allegations as insufficient). Additionally, "waiting until the close of discovery to file a motion for leave to amend is generally not preferred." *Kirsch v. Brightstar Corp.*, No. 12-cv-6966, 2014 WL 5166527, at *5 (N.D. Ill. Oct. 10, 2014).

## II. Discussion

### a. Counts other than Count VII and X

As an initial matter, the Wexlers have made myriad changes to counts *other* than the two counts the Court dismissed on May 30, 2024 - Counts VII (against Chubb for tortious interference with contract) and X (against both Chubb and Belfor for civil conspiracy) of the SAC [Dkt. 171]. Plaintiffs

will not be permitted to make those amendments at this time and must rely on the allegations in other counts as they were drafted in the SAC. Not only did the Court specify that any motion for leave to amend should detail "how [the Wexlers' proposed] amendments *cure the deficiencies of prior complaints*" [Dkt. 191 at 12 (emphasis added)] but notice pleading requirements in federal court are simply intended to "give the defendant fair notice of what the claim is and the grounds upon which it rests" and the language in the other counts has already passed muster by surviving the most recent motion to dismiss. *Walker v. Gatsios*, No. 19-cv-6072, 2024 WL 4476118, at *1 (N.D. Ill. Oct. 11, 2024) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### b. Count VII – Tortious Interference with Contract Against Chubb

A prima facie claim of tortious interference with contract requires proof of five elements: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) **defendant's awareness of the contract**; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by a third party; and (5) damages." *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.,* No. 12-cv-3530, 2012 WL 4932845, at *5 (N.D. Ill. Oct. 16, 2012) (emphasis added) (quoting *Echo, Inc. v. Timberland Machs. & Irrigation, Inc*., 661 F.3d 959, 968 (7th Cir. 2011)).

The binding precedent in this District is clear: a tortious interference claim must be dismissed if there are no fact specific allegations that defendant has actual knowledge of the terms of the contract at issue. *In re Douglas Dunhill, Inc*., 22 B.R. 953, 957 (N.D. Ill. 1982) (failure to establish a party knew of the contract or of the contract's terms requires dismissal of tortious interference claim); *Brinley Holdings, Inc. v. RSH Aviation, Inc*., 580 F. Supp. 3d 520, 540 (N.D. Ill. 2022) (absent evidence the offending party had knowledge of the contract and its terms, a claim must be dismissed). As the Court noted when ruling on the motions to dismiss the SAC, conclusory allegations are not sufficient to support a claim; a tortious interference claim cannot be maintained without the requisite

3

factual support. *Pillows v. Cook County Recorder of Deeds Office*, No. 18-cv-7497, 2019 WL 2524149, at *3 (N.D. Ill. June 18, 2019); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, the allegations must demonstrate a party has **actual knowledge** of the terms of the contract at issue; lack of knowledge of the contract's terms is fatal to an alleged tortious interference claim. *Brinley Holdings*, 580 F. Supp. 3d at 540 (absent evidence the offending party had knowledge of the contract and its terms, a claim must be dismissed). Further, the use of the phrase that a party "knew or should have known" is clear evidence an allegation is conclusory and cannot withstand a motion to dismiss. *Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 775-76 (N.D. Ill. 2010) (allegations in complaint insufficient because repeated use of claim defendant "knew or should have known" is conclusory and not sufficient to withstand challenge); *Blenheim Grp., LLC v. Golf Gifts & Gallery, Inc.*, No. 11-cv-899, 2011 WL 5373992 (N.D. Ill. Nov. 4, 2011) (merely asserting a defendant knew or should have known is insufficient to withstand a motion to dismiss and is clear evidence of a conclusory allegation); *LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F. Supp. 3d 775, 785 (N.D. Ill. 2013); *Pillows v. Cook Cty. Recorder of Deeds Off.*, No. 18-cv-7497, 2019 WL 2524149, at *3 (N.D. Ill. June 18, 2019) (same).

Here, Plaintiffs again seek to add a claim Chubb interfered with Plaintiffs' contract with Belfor. Yet, as in the SAC, the proposed TAC still fails to allege or provide any support that Chubb was provided with a copy of the Work Authorization between Plaintiffs and Belfor, or that Chubb was aware of the contract's provisions. *Brinley*, 580 F. Supp. 3d at 540; *Douglas Dunhill*, 22 B.R. at 957 (failure to establish that a party knew of the contract or of the contract's terms subjects a tortious interference claim's dismissal). In fact, Plaintiffs even admit that the TAC "does not allege that Chubb received a copy of the Work Authorization" [Dkt. 199 at 2].

Plaintiffs aver that the law does not require Chubb to have received the contract to have been "aware" of its terms [*Id*. at 2-3]. Plaintiffs argue that it is enough

4

>that Chubb knew or should have known that Belfor and the Wexlers entered into a contract; that as a matter of practice, mold remediation protocols were parts of contracts in these circumstances; and that Chubb received the Mold Remediation Protocol, meaning that Chubb knew the material terms of the contract.

[*Id*. at 3]. However, it is not enough for Plaintiffs to add conclusory "knew or should have known" language that amounts to nothing more than Plaintiffs' suspicions Chubb simply *must have* known.[1] The Court cannot fathom *how* Chubb could have – much less should have – known of the terms of a contract it never received, and the proposed TAC (and all prior versions of the Complaint) is devoid of any explanation for Plaintiffs' strong speculation on this point. This is a 2021 case where discovery has been ongoing for some three plus years now, yet Plaintiffs can make no more concrete allegations that Chubb had **actual knowledge** of the contract between Plaintiffs and Belfor than they could at the inception of this case. Plaintiffs now ask the Court for leave to allow it to file their fourth version of Count VII of a complaint rife with impermissible supposition instead of the necessary facts. It is simply not proper for the Court to allow the proposed amendments to Count VII of the Complaint when the amendments would not cure the defects of the SAC.

Finally, although Plaintiffs devote Paragraph 179 of the proposed TAC to an explanation of how Count VII is not preempted, the Court will not reach this issue here because there are no facts that can be currently alleged that would allow Plaintiffs to plead a prima facie claim of tortious interference. *Sterling Fire*, 2012 WL 4932845, at *5 (N.D. Ill. Oct. 16, 2012).

Thus, the Court will not allow Plaintiffs leave to file Count VII of their proposed Third Amended Complaint.

### c. Count X - Civil Conspiracy Against Chubb and Belfor

In Count X of the proposed TAC, Plaintiffs allege a claim of civil conspiracy against both

---

[1] Although proposed Paragraph 161 [Dkt. 199-2 at 42] does allege that "Chubb knew of a contract between Belfor and the Wexlers and was made aware of its material terms," the remainder of the paragraph (along with other proposed paragraphs of this Count) only speculates that Chubb *must have* known about the contract because of certain admissions.

Chubb and Belfor. Under a civil conspiracy theory, there must be an agreement by two parties to knowingly and voluntarily participate in a common scheme to perform an unlawful act or perform a lawful act in an unlawful manner. *Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1028-29 (N.D. Ill. 2007). A party is "required to allege *with specific facts* an agreement between [two parties] and a tortious act committed in furtherance of that agreement." *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000) (emphasis added); *Gros*, 525 F. Supp. 2d at 1028-29; *Nat'l All. of Wound Care, Inc. v. Morgan*, 2020 IL App (3d) 190691, ¶ 49; *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022).

Plaintiffs allege that Chubb and Belfor "entered into a conspiratorial agreement by which they agreed to limit the amount of work performed at the Home" and that Chubb and Belfor's respective goals under this agreement "were for Chubb to pay as little as possible and for Belfor to be paid" [Dkt. 199-1 at ¶¶ 202, 204].

On the other hand, Plaintiffs allege facts in their proposed TAC in direct conflict with this alleged "agreement" to limit work at Plaintiffs' home, namely that Chubb confirmed that Belfor should proceed with the mold remediation with no limitations, exceptions, or exclusions to the scope of work or services [*see* Dkt. 199-2 at ¶¶ 61, 170; Dkt. 211 at 9]. Additionally, Plaintiff's proposed TAC admits that Belfor – not Chubb – knew it was solely responsible for the mold remediation work at the home [Dkt. 199-2 at ¶ 164; Dkt. 211 at 9-10; Dkt. 212 at 4]. Belfor adds to these facts by noting that the work authorization itself entitled Belfor to payment from Plaintiffs if Chubb did not pay [Dkt. 212 at 4 (referencing Dkt 199-2 at Ex. 6)]. Finally, for completeness under Federal Rule of Evidence 106,[2] and to provide appropriate context to some of Plaintiff's newly proposed allegations

---

[2] Fed. R. Evid. 106 "is an expression of the rule of completeness….The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial." Advisory Comments to Fed. R. Evid. 106. While both considerations apply here, the Court was careful not to take Plaintiffs' allegations in the TAC out of their broader context.

in the TAC that rely on certain deposition testimony, the Court also considered the deposition testimony of Mr. Daniel Correa (attached to Chubb's response brief), who initially handled Plaintiffs' mold remediation project on behalf of Belfor. Mr. Correa confirmed that Plaintiffs – not Chubb – were Belfor's clients [Dkt. 211 at Ex. A at 21:8-12, 63:6-22, 64:8-15]. Mr. Correa also confirmed that Plaintiffs – not Chubb – ultimately decided what work should be performed by Belfor [*Id*. at 21:13-17]. Finally, Mr. Correa confirmed it was Belfor – not Chubb – that was solely responsible for implementing the mold remediation protocol [*Id*. at 67:9-11].

Despite the allegations of the proposed TAC, the Court still finds Plaintiffs offer no plausible factual support to show the existence of an agreement between Belfor and Chubb. *Indeck*, 316 Ill. App. 3d at 432 ("[c]haracterizing a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss."); *Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 23 (2d Dist. 1998) ("mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss" and conclusory allegations a conspiracy occurred, without any factual support, must result in dismissal of civil conspiracy claim).

Additionally, the Court notes the addition of new allegations characterizing Belfor's purported negligence as "willful and wanton" [Dkt. 199-2, at ¶ 199 (incorporating the newly-pled – but disallowed – "willful and wanton" allegations of Count V at ¶¶ 131 and 140)] cannot rescue Count X. As explained in Section II(a) *supra*, the effort to add new allegations to Counts other than Counts VII and X is improper at this juncture. Moreover, nowhere in their motion to amend do Plaintiffs contend or explain how the "willful and wanton" characterization would cure the deficiencies of Count X. In fact, it would not; the "willful and wanton" language cannot save the newly proposed Count X of the TAC. Illinois law does not recognize a separate action for "willful and wanton" conduct; rather, such allegations equate to "aggravated negligence." *West Bend Mutual Ins. Co. v. Comm. Unit Sch. Dist. 300*, 193 N.E.3d 266, 276-77 (Ill. App. Ct. 2021). There are two types of such claims: "intentional"

and "reckless." *Id*. Plaintiffs do not contend Belfor had actual intent to cause them harm, leaving "reckless" as the only possible claim. But a claim based on "recklessness" still requires an "utter indifference to or conscious disregard for the welfare of the plaintiff," *id*. at 277 (quoting *Kirwan v. Lincolnshire-Riverwoods Fire Protection Dist*., 811 N.E.2d 1259 (Ill. App. Ct. 2004)), and Plaintiffs offer no such non-conclusory allegations here. *Pillows*, 2019 WL 2524149, at *3 (conclusory allegations insufficient to support a claim). The only conduct characterized as "knowing, willful and wanton" in the (improper and disallowed) amended Count V concerns conduct occurring *before* the work authorization was signed [Dkt. 199-2, at ¶ 131] and, thus, the alleged "knowing, willful and wanton" conduct has nothing to do with the purported civil conspiracy that supposedly occurred *after* the work authorization was signed.

Thus, the Court cannot allow Plaintiffs leave to file Count X of their proposed Third Amended Complaint.

### d. Prejudice to Chubb and Belfor

Finally, the Court may deny the filing of an amended complaint when it finds the amendment would cause undue prejudice to the defendants. *Nygren*, 658 F.3d at 797. As Belfor correctly points out [Dkt. 212 at n. 4], Plaintiffs' delay is particularly inexplicable because Plaintiffs have possessed the documents upon which the TAC relies for years, and the most recent deponents were Plaintiffs themselves. Thus, no evidence is new to Plaintiffs. *Craigville*, 2023 WL 3727916, at 3-4 (declining leave to amend complaint due in part to moving party failing to cite discovery obtained over the years in support of proposed amendments); *see also*, *Ameritech Corp*., 188 F.R.D. at 284 (denying motion to amend complaint where party "failed to meet its burden of showing some valid reason for delay").

Finally, permitting the new allegations, which Belfor alleges contradict Plaintiffs' prior testimony [Dkt. 212 at n. 1], would indeed require reopening fact discovery (both Defendants cite the need to redepose Amy and Ken Wexler, and Chubb cites a need to redepose representatives of Belfor

8

[Dkt. 211 at 12; Dkt. 212 at n. 4]), and impact Belfor's pending motion for partial summary judgment [Dkt. 192]. Thus, the trial set for March 2025 would have to be moved to *at least* the Summer of 2025 to accommodate completion of fact discovery, additional expert and rebuttal reports, expert depositions, and dispositive motions, and would likely need to be moved further due to the Court's calendar. This is certainly a huge impact on both the parties and the Court so many years into this litigation, and this factor further bolsters the Court's decision to disallow Plaintiffs leave to file their proposed TAC.

### III. Conclusion

In conclusion, Plaintiffs' Motion for Leave to File Third Amended Complaint [Dkt. 199] is DENIED. The jury trial in this matter remains set for March 3, 2025 through and including March 13, 2025 [Dkt. 198]. A telephonic status hearing is set for January 16, 2025 at 9:30 a.m. to set all remaining pretrial dates, including the date of the pretrial conference. The call in information is 855-244-8681, and the participant access code is 2315 0911 461#. Additionally, by NOON on January 14, 2025, the parties are to file a joint proposed schedule for all remaining pretrial dates so the Court may prepare for the January 16, 2025 hearing.

**ENTERED: January 10, 2025**

_____
Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge