**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMY WEXLER and KENNETH A. WEXLER,<br>Plaintiffs,<br>vs.<br><br>CHUBB NATIONAL INSURANCE COMPANY,<br>and BELFOR USA GROUP INC.<br>Defendants.<br>and<br><br>CHUBB NATIONAL INSURANCE COMPANY,<br>Counterclaim Plaintiff,<br>vs.<br><br>AMY WEXLER and KENNETH A. WEXLER,<br>Counterclaim Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:21-cv-02543 |

**CHUBB NATIONAL INSURANCE COMPANY'S**
**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE NO. 3**
**REGARDING EVIDENCE OF ILLINOIS SECTION 155 VIOLATIONS**

COMES NOW Defendant Chubb National Insurance Company ("Chubb"), by undersigned counsel, and pursuant to Federal Rule of Evidence 104(a), 401, 402 and 403, respectfully moves to bar Plaintiffs Amy Wexler and Kenneth A. Wexler ("Wexlers" or "Plaintiffs") and its counsel from attempting to introduce evidence of alleged violations of Illinois Insurance Code Section 155. Chubb further requests that this Court instruct Wexlers counsel to advise all witnesses not to express opinions or to give testimony about alleged damages for attorneys' fees or the amount of attorneys' fees that Wexlers incurred, and not to make any references in counsel's *voir dire*, opening statement, questions, testimony, trial exhibits, or closing argument concerning alleged violations of the Illinois Insurance Code and in support states as follows:

In accordance with this Court's Order, the parties participated in a Rule 37 meet-and-confer concerning this Motion in Limine and the parties were unable to reach an agreement.

**A. Background**

Plaintiffs' Second Amended Complaint asserts Chubb violated Section 155 of the Illinois Insurance Code in its handling of their claim for damages arising from this water leak incident. (Dkt. 150, paras. 9-11, 84, 161-173). Plaintiffs' Section 155 claim is the subject of Chubb's Motion to Bifurcate. (Dkts. 328 and 349).

The allegations appearing at paras. 162-173, pp. 39-43 of Count VII of Plaintiffs' Second Amended Complaint, form the core of Plaintiffs' Section 155 Claim. (Dkt. 150). The following allegations and related evidence are totally irrelevant to Plaintiffs' breach of contract claim:

1. "Forcing the Wexlers' Home to sit in a vacant, moldy, and unusable state for more than four years while Chubb has strung out and refused payment of the claim";
2. "Failing to issue a fair and equitable settlement after more than four years since the water damage occurred";
3. "Assigning adjusters to oversee the Wexlers' Claim who have no formal training regarding the investigation or remediation of residential property damaged by water or mold";
4. "Failing to follow its internal claim handling guidelines in investigating the Wexlers' Claim";
5. "Relying on a sublimit in the Policy to limit coverage for mold growth that would not have existed had Chubb not improperly limited the scope of permissible remediation at the Home."
6. "The attitude of Chubb in its investigation, as reflected in its final coverage decision, and its refusal to pay over $5 million in covered damage was unreasonable and vexatious".

7. "Chubb's designated appraiser, Ray Pawlak, repeatedly engaged in conduct intended to delay the completion of the appraisal process demanded by Chubb in this litigation, which caused the appraisal process to take nearly two years to complete"

8. "Chubb acknowledged that the mold sublimit was inapplicable to the Wexlers' claim"

9. "Chubb's negligence in adjusting a claim or directing remediation work"

10. "Chubb cancelled the policy because this lawsuit was filed. After the Illinois Department of Insurance scheduled a hearing regarding the cancellation, Chubb reinstated the policy rather than explain its reasons for cancelling the policy"

11. "Chubb's obstruction, delayed investigation and adjustment of the claim, and unreasonable denial of covered replacement costs."

12. "Chubb has engaged in vexatious and unreasonable delay in effectuating a fair or equitable claim settlement by relying on purposefully low estimates of the value of the damaged property (real and personal) that were not based on legitimate analyses and improperly disregarded the Wexlers' estimates that were prepared by highly qualified professionals. With respect to the Home, Chubb exacerbated the damage and failed to hire appropriate professionals to render valid opinions of the scope of repairs and their true cost."

(Dkt. 150, paras. 163, 165, 167, 169, 170, 173)

As is further discussed below, any evidence or argument concerning these allegations should be admitted, if at all, during a Section 155 phase and not in front of the jury.

### A. Compliance with Section 155 Is Exclusively Determined By The Court – Not A Jury - Introducing Any Illinois Regulations, Evidence, Or Argument With Regards To Insurance Claim Handling And Illinois' Bad Faith Statue To The Jury Is Prejudicial And Not Relevant

Plaintiffs have brought claims for statutory penalties under 215 I.L.C.S. 5/155 ("Section 155 claim"). Section 155 provides as follows:

> Sec. 155. Attorney fees.
>
> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears **to the court** that such action or delay is vexatious and unreasonable, **the court** may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $60,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action. 215 I.L.C.S. 5/155 (2025) (emphasis added).

Plaintiffs cannot prevail on their Section 155 claim without first prevailing on their breach of contract claim. *O'Rourke v. Access Health, Inc*., 668 N.E.2d 214, 222 (1st Dist. 1996); *Martin v. Illinois Farmers Ins*., 742 N.E.2d 848, 857 (1st Dist. 2000) (A defendant cannot be liable for section 155 relief where no benefits are owed.). Thus, if Chubb prevails on the breach of contract claim, that is dispositive of Plaintiffs' Section 155 claim. Moreover, as was detailed in Chubb's Motion to Bifurcate (Dkts. 328 and 349), there is no right to a jury trial on a Section 155 claim in Illinois. *Kaniuk v. Safeco Ins. Co. of Illinois*, 142 Ill. App. 3d 1070, 1073-74 (1st Dist. 1986) (no right to jury under Section 155 and this does not violate Plaintiff's rights); *see also Moles v. Illinois Farmers Ins. Co.*, 2023 IL App (1st) 220853, ¶ 24 (Section 155 not a standalone cause of action where no viable breach of contract claim exists).

Further, Illinois law is clear that only the Court has the power to determine whether to impose Section 155 damages – not a jury. *Kaniuk v. Safeco Ins. Co. of Illinois*, 492 N.E.2d 592, 595 (1st Dist. 1986); *see also Shelter Mutual Ins. Co. v. Flynn*, No. 1-22-1151, 2023 WL 2733478, *3 (1st Dist. Mar. 31, 2023) (determination of whether an insurer's action in denying or delaying

a claim payment is determined by the trial court); *Remprex, LLC v. Certain Underwriters at Lloyd's London*, 228 N.E.3d 321, 346 (1st Dist. 2023) (granting of attorney fees and penalties under Section 155 is entrusted to the discretion of the trial court).

The applicable regulatory laws regarding claim handling in Illinois are contained in Section 154 of the Insurance Code. 215 ILCS 5/154 (2022). However, Illinois law is clear that Section 154 "is a regulatory provision that comes within the purview of the State Department of Insurance . . . It does not provide a policyholder with a private remedy or cause of action for an insurer's improper claims practice." *Zagorski v. Allstate Ins. Co.*, 54 N.E.3d 296, 304 (5th Dist. 2016); *Purlee v. Liberty Mut. Fire Ins. Co.*, 631 N.E.2d 433 (5th Dist. 1994) ("However, while section 154.6 defines acts constituting improper insurance claims practice, it does not give rise to a private cause of action."); *Area Erectors, Inc. v. Travelers Prop. Cas. Co. of America*, 981 N.E.2d 1120, 1127 (1st Dist. 2012); *Hopman v. State Farm Mut. Auto. Ins. Co.*, No. 2-23-0423, 2024 WL 3043970, at *3 (2nd Dist. June 18, 2024) (Section 154 "does not give rise to a private remedy or cause of action by a policyholder against an insurer but is instead regulatory in nature."); *American Service Ins. Co. v. Passarelli*, 752 N.E.2d 635 (1st Dist. 2001); *Van Vleck v. Ohio Cas. Ins. Co.*, 471 N.E.2d 925, 927 (3rd Dist. 1984).

Because Plaintiffs must first prove that Chubb breached the contract, and because the Section 155 claim is heard, if at all, exclusively by the trial court, it is axiomatic that Plaintiffs cannot put the cart before the horse by introducing evidence and argument of alleged Section 155 violations to try to inflame and influence the jury. Plaintiffs burden of proving its contract damages rests primarily on proving causation and damages; it has nothing to do with internal claims guidelines, policy cancellations, Chubb's "attitude" or any of the other alleged grievances set forth in Plaintiffs Section 155 cause of action. *Phillips v. Waukegan Housing Auth.*, 642 F.Supp.3d 743, 760 (N.D. Ill. Nov. 23, 2022) (breach of contract claim requires evidence of contract's existence,

performance of contract obligations by plaintiff, breach of contract obligations by defendant, and damages arising from the contract breach).

### B. Plaintiffs 155 Allegations Involve Claims that were Dismissed and Chubb's Motives that Are Irrelevant to Plaintiffs Burden of Proving the Breach of Contract Claim

Plaintiffs Section 155 Count is a mishmash of allegations involving conduct that has already been adjudicated as not actionable in the Court's Orders dismissing Counts III, IV, and VI (Dkt. 50), Counts VII and X (Dkt. 117), and Count II (Dkt. 340) along with various other hyperbolic grievances that have nothing to do with whether Plaintiffs can prove that Chubb did not pay all the benefits due and owing under the Policy.

The following allegations and related evidence are essentially a carry-over from Plaintiffs' other causes of action that were already dismissed:

1. "Chubb breached the Policy by, among other things, directing Belfor to perform less work than Belfor had recommended and was required to remediate water damage caused by the burst pipes, which permitted mold damage to occur" (Dkt. 150, para. 104);

2. "Chubb breached the Policy by obstructing and failing to implement the EGSL Mold Remediation Protocol or by failing to develop and implement any other effective mold remediation plan after mold was discovered at the Home and by failing to supervise Belfor's work at the Home." (Dkt. 150, para. 106);

3. "Chubb breached the Policy by failing to take reasonable means to protect the Wexlers' Home and contents from further loss or damage." (Dkt. 150, para. 107);

4. "Chubb's breaches of the Policy were the direct proximate cause of extensive mold damage to the Home and its contents." (Dkt. 150, para. 108);

5. "Chubb nevertheless engaged in an intentional and unjustified inducement of a breach of the Work Authorization by Belfor by refusing to authorize and pay for work that was necessary for the proper remediation of the damage." (Dkt. 150, para. 158);

6. "Under the terms of the Wexlers' policy, the work performed by Belfor was to be paid for by Chubb. Chubb desired to pay as little as possible and Belfor wanted to be paid for its work. Although Belfor knew the standards and obligations to which it was required to adhere, it also knew that Chubb would only pay it for the work Chubb authorized. Thus, Chubb and Belfor agreed that, to achieve their respective goals, Chubb would instruct Belfor on the scope of the remediation work it performed, and Belfor would follow Chubb's instructions. Chubb and Belfor made this agreement even though Belfor was the expert which knew what work was appropriate in the context of water and mold remediation, and Chubb was not." (Dkt. 150, para. 182);
7. "Chubb instructed Belfor on the scope of the water and mold remediation to be performed for the Wexlers, Belfor knew Chubb's instructions were wrong and subjected the Wexlers to more harm, but Belfor agreed to follow and did follow Chubb's instructions nevertheless. In so doing, Belfor engaged in willful and wanton conduct, recklessly increasing the harm to and the damages suffered by the Wexlers, who have been out of their Home now for 5 years as a result." (Dkt. 150, para. 183);
8. "Chubb's and Belfor's agreement and course of action accomplished their goals. Chubb paid less than it would have had to pay if Belfor performed pursuant to its expertise, duties, and contractual obligations. And Belfor was paid by Chubb for the work it performed." (Dkt. 150, para. 184); and
9. "Chubb's negligence in adjusting a claim or directing remediation work" (Dkt. 150, para. 173);

Further any allegations and evidence concerning Chubb's "attitude" such as allegations that Chubb did something "deliberately" or that Chubb "obstructed" or "delayed" or "acted unreasonably" solely concern Chubb's alleged vexatious attitude or motive in denying any additional claim payments. The following allegations and evidence fall into this category:

1. "Forcing the Wexlers' Home to sit in a vacant, moldy, and unusable state for more than four years while Chubb has strung out and refused payment of the claim" (Dkt. 150, para. 167);
2. "Failing to issue a fair and equitable settlement after more than four years since the water damage occurred" (Dkt. 150, para. 167);
3. "Relying on a sublimit in the Policy to limit coverage for mold growth that would not have existed had Chubb not improperly limited the scope of permissible remediation at the Home" (Dkt 150, para 167);
4. "The attitude of Chubb in its investigation, as reflected in its final coverage decision, and its refusal to pay over $5 million in covered damage was unreasonable and vexatious" (Dkt. 150, para. 168);
5. "Despite acknowledging internally that the Policy's $10,000 mold sublimit does not apply to the Wexlers' claim, for its Fourth Affirmative Defense to the Wexlers' original complaint, Chubb alleged that the Policy's "Mold Remediation Expenses coverage is subject to a $10,000 limit" and "[t]he coverage limit for Mold Remediation Expense was exhausted by Chubb's payments. As a result, any additional Mold Remediation Expenses are not covered by the Policy." (Dkt. 150, para. 171);
6. "For its Fifth Affirmative Defense, Chubb alleged that "Plaintiffs' damages include increased costs relating to mold damage and mold remediation. The damages sought by Plaintiffs in the Complaint are barred or limited by the Mold exclusion provision of the Policy." (Dkt. 150, para. 171);
7. "Chubb acknowledged that the mold sublimit was inapplicable to the Wexlers' claim" (Dkt. 150, para. 173);
8. "The attitude of Chubb in its investigation, as reflected in its final coverage decision, and its refusal to pay over $5 million in covered damage was unreasonable and vexatious" (Dkt. 150, para. 168);

9. "Chubb's obstruction, delayed investigation and adjustment of the claim, and unreasonable denial of covered replacement costs" (Dkt. 150, para. 169);

10. "Chubb has engaged in vexatious and unreasonable delay in effectuating a fair or equitable claim settlement by relying on purposefully low estimates of the value of the damaged property (real and personal) that were not based on legitimate analyses and improperly disregarded the Wexlers' estimates that were prepared by highly qualified professionals. With respect to the Home, Chubb exacerbated the damage and failed to hire appropriate professionals to render valid opinions of the scope of repairs and their true cost." (Dkt. 150, para. 163);

11. "For its Counterclaim, Chubb sought to compel appraisal of "Mold Remediation Expenses" and, in support of this claim alleged that "Chubb's counsel also informed Wexler's counsel that the 'entire loss' claimed by Wexler does not acknowledge or consider the applicable sublimit of $10,000 for Mold Remediation Expense which had already been exhausted by Chubb's payments to date." Chubb sought to compel appraisal, in part, "to identify any costs relating to . . . 'Mold Remediation Expense' coverages in the Policy even though, by its own internal acknowledgment and conduct since at least May 2019, Chubb knows that the Policy's mold sublimit does not apply to this loss." (Dkt. 150, para. 172); and

12. "Chubb has taken the position in this lawsuit that it is entitled to an appraisal of the Wexlers' damages even though the appraisal clause, by its express terms, applies only to losses covered by the Policy. It does not extend to losses caused by Chubb's negligence in adjusting a claim or directing remediation work. Moreover, Chubb has taken the position that such an appraisal should account for purportedly "uncovered" (i) mold remediation expense even though prior to litigation, Chubb acknowledged that the mold sublimit was inapplicable to the Wexler's claim; and (ii) "code upgrades," even though this concept is wholly inapplicable to consequential damages resulting from Chubb's negligent remediation efforts." (Dkt. 150, para. 173).

Next, Plaintiffs lob a hodge-podge of allegations relating to such things as Policy cancellation, litigation conduct, appraiser conduct, failure to follow unspecified internal claims handling guidelines and adjustment delays. The following allegations and evidence fall into this category:

1. "Chubb cancelled the policy because this lawsuit was filed. After the Illinois Department of Insurance scheduled a hearing regarding the cancellation, Chubb reinstated the policy rather than explain its reasons for cancelling the policy" (Dkt. 150, para. 165);
2. "Assigning adjusters to oversee the Wexlers' Claim who have no formal training regarding the investigation or remediation of residential property damaged by water or mold" (Dkt. 150, para. 167);
3. "Failing to follow its internal claim handling guidelines in investigating the Wexlers' Claim" (Dkt. 150, para. 167);
4. "Relying on a sublimit in the Policy to limit coverage for mold growth that would not have existed had Chubb not improperly limited the scope of permissible remediation at the Home" (Dkt 150, para 167);
5. "Chubb has asserted defenses in this litigation that are directly at odds with its pre-litigation positions and conduct. Further, Chubb's designated appraiser, Ray Pawlak, repeatedly engaged in conduct intended to delay the completion of the appraisal process demanded by Chubb in this litigation, which caused the appraisal process to take nearly two years to complete" (Dkt. 150, para. 170);
6. "Despite acknowledging internally that the Policy's $10,000 mold sublimit does not apply to the Wexlers' claim, for its Fourth Affirmative Defense to the Wexlers' original complaint, Chubb alleged that the Policy's "Mold Remediation Expenses coverage is subject to a $10,000 limit" and "[t]he coverage limit for Mold Remediation Expense was exhausted by Chubb's payments. As a result, any additional Mold Remediation Expenses are not covered by the Policy." (Dkt. 150, para. 171); and

7. "Chubb's designated appraiser, Ray Pawlak, repeatedly engaged in conduct intended to delay the completion of the appraisal process demanded by Chubb in this litigation, which caused the appraisal process to take nearly two years to complete" (Dkt. 150, para. 170).

None of the foregoing allegations and evidence have anything to do with whether Plaintiffs can meet their burden of proving causation and damages. To the extent they are relevant at all, they have no probative value whatsoever to the breach of contract claim, and would only be used to attempt to inflame the jury so that it overlooks the holes in Plaintiffs causation and damages case. Therefore, the Court should prohibit Plaintiffs from offering them into evidence, characterizing them for the jury, or otherwise presenting testimony or argument about them as this would result in unfair prejudice, jury confusion, and undue delay. Fed. R. Evid. 403.

**C. Plaintiffs Cannot Introduce or Argue the Illinois Insurance Regulations or Statutes that They Claim Chubb Violated.**

Finally it hopefully goes without saying, but Chubb says it anyway, that binding law in this Circuit, and throughout Illinois, is that a claim of improper claim handling practices by an insurer based upon Sections 154 and 155 of the Insurance Code does not create a private cause of action or a remedy by a plaintiff and is regulatory in nature only and, as a result, introduction of any insurance regulations or statutes with regards to alleged bad faith handling of a claim is prejudicial and inadmissible. *Bernacchi v. First Chicago Ins. Co.*, 52 F.4th 324, 330 (7th Cir. 2022); *Bageanis v. American Bankers Life Assur. Co. of Florida*, 784 F.Supp. 1141, 1149 (N.D. Ill. 1992); *Castellano v. State Farm Mut. Auto. Ins. Co.*, No. 5-12-0304, 2013 WL 5519596, at *4 (5th Dist. Oct. 2, 2013); *Cramer v. Ins. Exchange Agency*, 675 N.E.2d 897, 904 (Ill. 1996); 215 ILCS 5/155.

Even if any regulations or statute were relevant to the issues the jury will decide, allowing Plaintiffs to offer them into evidence, characterize them for the jury, or otherwise present testimony or argument about them would result in unfair prejudice, jury confusion, and undue delay[1]. Fed. R. Evid. 403.

Indeed, the prejudice of showing regulations or the statute to the jury and characterizing them far outweighs any probative value because they create the incorrect impression that any violation of a standard or obligation reflected in the documents would constitute a breach of the contract between Chubb and Plaintiffs. The only way for Chubb to avoid that prejudice would be to engage in a mini-trial about the meaning of the Illinois Insurance Code, the application of its implementing regulations, and how those standards, obligations, and provisions relate to Chubb's conduct – which is specifically why it is black letter law in Illinois that the elements and support for a bad faith claim are only to be heard by the Court – and only after the Plaintiffs have obtained a jury verdict finding a breach of contract of insurance between Plaintiffs and Chubb. *Moles v. Illinois Farmers Ins. Co.*, 2023 IL. App (1st) 220853, ¶ 24; *O'Rourke v. Access Health Ins.*, 668 N.E.2d 214, 222 (1st Dist. 1996); *Martin v. Illinois Farmers Ins.*, 742 N.E.2d 848, 857 (1st Dist. 2000); Dkt. 328, PageID# 22009-22010.

Therefore, since Plaintiffs' Section 155 claim and related evidence is exclusively within the prerogative of this Court and not the jury, any introduction of argument or evidence with regards to the allegations addressed above which relate to causes of action that have been previously dismissed, Chubb's "attitude" or motivations, Chubb's claims handling materials, Chubb's litigation or appraiser conduct, Illinois' statutes and regulations and any accompanying legislative materials is not relevant, highly prejudicial to Chubb, and not admissible for the issues

[1] It is noteworthy that Plaintiffs have not disclosed any retained or non-retained claim handling expert in support of their claim.

to be determined by this jury, and that any attempt on the part of the parties, their counsel and/or witnesses to do so may cause irreparable harm to Chubb in the trial of this action resulting in a mistrial.

Respectfully submitted by,

*/s:/ Matthew S. Ponzi*

Matthew S. Ponzi, Esq. (mponzi@fgppr.com )
Michael S. Errera, Esq. (merrera@fgppr.com)
Foran Glennon Palandech Ponzi & Rudloff PC
222 North LaSalle Street, Suite 1400
Chicago, Illinois 60601
*Attorneys for Defendant Chubb National Insurance*

**CERTIFICATE OF SERVICE**

I, the undersigned, state under penalties as provided by law, that I served the aforementioned document, to be filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record on July 3, 2025.

Paul H. Tzur
Seth D. Lamden
Blank Rome LLP
444 W. Lake Street, Suite 1650
Chicago, IL 60606
ptzur@blankrome.com
slamden@blankrome.com
*Counsel for Plaintiff*

Chris J. Chasin
Brian A. McAleenan
Duane Morris LLP
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
e-mail: cjchasin@duanemorris.com
e-mail: BAMcAleenan@duanemorris.com

***and***

Damon N. Vocke
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086
Telephone: 212-692-1059
Email: dnvocke@duanemorris.com

*Attorneys for Belfor USA*

*/s:/ Matthew S. Ponzi*

Matthew S. Ponzi (mponzi@fgppr.com )
Michael S. Errera (merrera@fgppr.com)