UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY WEXLER and KENNETH WEXLER, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 21-cv-2543 |
| CHUBB NATIONAL INSURANCE CO., and BELFOR USA GROUP, INC., | ) Magistrate Judge Keri L. Holleb Hotaling |
| Defendants, | ) |
| and | ) |
| CHUBB NATIONAL INSURANCE CO., | ) |
| Counterclaim Plaintiff, | ) |
| v. | ) |
| AMY WEXLER and KENNETH WEXLER, | ) |
| Counterclaim Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs' (Amy Wexler and Kenneth Wexler; collectively, "Plaintiffs" or "the Wexlers"), pursuant to Federal Rule of Civil Procedure 56, move for partial summary judgment [Dkt. 268] against Defendant Chubb National Insurance Co. ("Chubb") on Counts I (Breach of Contract, Water Damage), Count VIII (Section 155 Relief), and Count XI (Declaratory Judgment) of their Second Amended Complaint ("SAC") [Dkt. 150]. The Wexlers also move for summary judgment on Chubb's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Affirmative Defenses [Dkt. 155]. For the reasons explained below, the motion is granted in part and denied in part.

**I.**  **Standard of Review**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material

fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Equal Emp. Opportunity Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 621 (7th Cir. 2018). In doing so, "[t]he court need [not] consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

Additionally, as to an affirmative defense, the defendant bears the burden of proving the affirmative defense. *Anderson v. Larry*, No. 21-cv-944, 2022 WL 17357434, at *7 (N.D. Ill. Dec. 1, 2022) (citing *Harnishfeger v. United States*, 943 F.3d 1105, 1116 (7th Cir. 2019)). In fact, the federal rules specifically list affirmative defenses that must be pled, including, *inter alia*, accord and satisfaction; arbitration and award; payment; and waiver. Fed. R. Civ. P. 8(c)(1). Courts in this district routinely entertain motions seeking the dismissal of affirmative defenses under Fed. R. Civ. P. 56(a). *A.F. Moore & Assocs., Inc. v. Pappas*, No. 18-cv-4888, 2025 WL 863293, at *7 (N.D. Ill. Mar. 19, 2025).

## II.     **Procedural History**

In January 2021, Plaintiffs filed this suit in the Circuit Court of Cook County, Illinois, and Defendants later removed the case to this Court based on diversity jurisdiction. [Dkt. 1.] The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of Illinois and Defendants are citizens of Colorado, Indiana, Michigan, and New Jersey. [Dkt. 1-1.] On

September 7, 2021, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt. 29.] This case was originally assigned to Magistrate Judge McShain. It was reassigned to Magistrate Judge Holleb Hotaling as part of a routine calendar adjustment when Judge Holleb Hotaling assumed the bench on August 10, 2023. [Dkt. 119.]

On May 30, 2024, Judge Holleb Hotaling dismissed Counts VII (Tortious Interference with Contract against Chubb). [Dkts. 170, 171; *see also* Dkt. 191.] On June 20, 2025, the Court granted summary judgment in Chubb's favor on Count II (Breach of Contract, Water and Mold Remediation) of the SAC [Dkt. 339.]

### III. Factual Background[1]

At all times relevant to this suit, the Wexlers owned and lived in a single-family home ("the Home") in Glencoe, Illinois, a near-north suburb of Chicago. During a thirty-six-hour period between January 29 and January 31, 2019, a catastrophic storm colloquially known as "the Polar Vortex" struck northern Illinois, and the Chicago metropolitan area experienced a temperature drop of over fifty degrees from 32°F to -20°F. Due to this severe temperature fluctuation, water service pipes at the Home burst and released water into the Home on February 1, 2019, causing damage to the Wexlers' property.

Amy Wexler subsequently communicated with Plaintiffs' insurance broker, Aon, and Plaintiffs also filed a claim with their insurer, Chubb. Also on February 1, 2019, Amy Wexler spoke with a representative of Belfor USA Group Inc., a water remediation company. On February 7, 2019, Amy Wexler executed a Work Authorization, which authorized Belfor "to effect repairs [at the Home] on an Emergency Basis" and entitled Belfor to recover from Chubb for its work (or if Plaintiffs'

---

[1] The Court has adopted all facts herein from its June 20, 2025 Memorandum Opinion and Order [Dkt. 339] granting in part Chubb's motion for summary judgment. In other parts of this Memorandum Opinion and Order, "CSOF" refers to Chubb's Statement of Material Facts [Dkt. 254] and "CAF" refers to Chubb's Statement of Additional Material Facts [Dkt. 297].

3

insurance claim was denied, Plaintiffs would be "personally liable for all costs of services performed").

On February 7, 2019, air quality and mold testing were conducted, and mold was found to be present in the Home. The Wexlers were informed of the mold and moved out of the Home on Monday February 11, 2019. Plaintiffs have not lived in the Home since.

Plaintiffs have not yet sought a building permit to perform repairs to the Home. However, Plaintiffs hired an architect to prepare an assessment of what would be involved in either repairing the home as is/was or rebuilding. The architect informed Plaintiffs that to prepare a repair or rebuild assessment, it would need the services of a contractor and structural engineer.[2] Plaintiffs then paid for two structural engineers that subcontracted with the architect to prepare structural engineering drawings necessary for the repair and rebuild plans for the Home. A structural evaluation was completed and then another firm was contacted to analyze the structural evaluation with an eye toward potentially preparing "Structural Repair Drawings" showing structural repairs necessary to repair the Home.[3] The Wexlers had a general contractor use these drawings and specifications (which the general contractor described as "a guide of the repairs that needed to take place") to obtain bids from subcontractors and prepare a proposed construction budget based on walkthroughs of the Home with those subcontractors. According to Chubb's Schedule of Payments, Chubb paid $50,000 to the Wexlers on March 26, 2019, as an "advance towards the necessary repairs." The Schedule of Payments classified $25,000 of that amount as an "[a]dvance Payment towards architectural fees,

---

[2] Plaintiffs subsequently fired their architect and he later testified that his design was never accepted by Plaintiffs: "we pursued several options, and [the Wexlers] just killed the project" because his design was "too contemporary."

[3] In the Fall of 2020, this firm, Goodfriend Magruder Structure, LLC ("Magruder"), presented to Plaintiffs drawings of latent defects in the Home that required repairs. These drawings were "an in-progress, not for construction set of drawings" that "was basically in the form of a construction document that is suitable for bidding and for permitting with the Village," rather than drawings that could be used to repair, replace or rebuild the Home. Magruder had not been authorized to create "a remediation set of documents or repair documents." In the Fall of 2020, Magruder was told "we'll get back to you when we decide what we're going to do." Magruder confirmed that it has not heard from Plaintiffs since the Fall of 2020 and "no new work ever developed."

designs, and permits."

As to insurance coverage for Plaintiffs' loss, Plaintiffs' residence and contents were the subject of a Masterpiece Policy of Insurance issued by Chubb, bearing policy number 1146897 6-09 with an effective date range of September 1, 2018, to September 1, 2019 ("Policy"). The Policy contains two alternative measures of loss: reconstruction cost value ("RCV") and reconstruction cost less depreciation or actual cash value ("ACV"). RCV is defined in the Policy as "the lesser of the amount required at the time of loss to repair, replace or rebuild, at the same location, your house or any other permanent structure, using like design, and materials or workmanship of comparable kind and quality." The Policy states "If you have a covered partial loss to your house or other permanent structure and do not begin to repair, replace or rebuild within 180 days from the date of loss or a later date if agreed to by [Chubb], we will only pay the reconstruction costs, less depreciation." The Policy also provides Extra Coverages for, among other things, "Mold Remediation Expenses," "Rebuilding to Code," and "Additional Living Expense," each covered as set forth in the Policy.

Under the terms of the Policy, if there is a disagreement as to the "amount of loss" for a claim, either the insured or the insurer may invoke the Policy's appraisal clause, whereunder each party would select an appraiser and those two appraisers would select a third appraiser, who would "set the amount of loss" via "written agreement signed by any two of the three appraisers."

As mentioned above, Chubb began making payments to Plaintiffs under the Policy as early as March 26, 2019. On May 7, 2019, Chubb claims adjuster Robert Paradis sent an email to the Wexlers stating that "[a]ll contents that can't be cleaned will be added to a total loss contents list. Chubb will hire a contents valuation company to assist with the creation of this inventory and pricing of same." On August 12, 2019, Chubb engaged a firm called Enservio "to evaluate the condition of [Plaintiffs' total loss list] and then create a total loss inventory for all of items deemed unsalvageable." Enservio ultimately issued two "Total Loss Reports." In a February 5, 2020 email, Paradis told Aon, the

5

Wexlers' insurance broker, that "[a]s for the contents, the majority of the contents have been deemed a total loss, as they sat in a wet house for several months. To date, we have paid over $1M under their contents coverage and anticipate paying out the policy limits before we finalize this claim." By February 18, 2020, Chubb knew the Wexlers' "total loss inventory easily exceeds the policy limit" and the adjuster assigned to the file requested internal authority to pay Plaintiffs the "balance of contents policy limits."

On April 23, 2020, Plaintiffs submitted a Proof of Loss to Chubb in the amount of $3,302,466.50. On December 23, 2020, Chubb demanded an appraisal of Plaintiffs' insurance claim. On January 25, 2021, Plaintiffs' counsel responded to Chubb's appraisal demand letter seeking clarification of the terms under which Chubb was seeking appraisal. In response, on January 29, 2021, Plaintiffs filed the instant suit, which was removed to federal court on May 11, 2021. In October of 2021, Chubb filed a motion to compel appraisal which Judge McShain granted on March 25, 2022: "Plaintiffs and Chubb are ordered to participate in the appraisal process, and the appraisal award must be sufficiently itemized and segregated to enable the parties and the Court to identify the amount of loss (actual cash value and replacement cost) for all coverage categories, including the home itself, the contents of the home, additional living expenses ("ALE"), mold remediation, and rebuilding to code."

With respect to the Home appraisal, on March 1, 2023, the Appraisal panel entered an award (the "House Award") with regards to the "amount of loss" for the Home, ALE, mold remediation, and building to code. The House Award set the amount of loss for the reconstruction cost of the home at $921,472.04 (replacement cost value); depreciation at $92,236; reconstruction cost less depreciation (actual cash value) at $829,236.04; mold remediation at $36,480; code compliance at $32,350; and the period of restoration for ALE at 8 months. (A separate Contents Award was issued on January 17, 2024 with regards to Plaintiffs' contents claim.)

6

Prior to the House Award, Chubb had compensated Plaintiffs and their vendors $521,319.85 for ALE for 26 months and 10 days, from January 31, 2019 until April 16, 2021. This period included Plaintiffs' hotel expenses from January 31, 2019 to June 5, 2019, and a home rental from June 1, 2019 until April 16, 2021. Although the Plaintiffs and Chubb debate by how much, it is undisputed that the House Award was less than Plaintiffs' Proof of Loss and more than the amount paid by Chubb prior to the House Award's issuance. Plaintiffs and Chubb also dispute how much Chubb has paid Plaintiffs on the Home claim and for ALE. Although Plaintiffs and Chubb agree Chubb has paid $10,000 towards mold remediation expenses, Plaintiffs "deny that the [$10,000] Policy limit with regards to mold remediation expenses is applicable due to waiver by Chubb." Upon receiving the House Award, Chubb issued an additional payment of $191,034.04 to Plaintiffs on March 29, 2023.[4]

Perhaps unsurprisingly, Plaintiffs and Chubb also disagree regarding the total amount Chubb has paid towards Plaintiffs' contents claim, either before or after the contents appraisal. That contents appraisal still had not taken place when Judge Holleb Hotaling took over the case. On September 26, 2023, the Court ordered the following: "per the Court's previous order entered 18 months ago, Plaintiffs and Chubb are ordered to complete the appraisal process pursuant to the appraisals clause of the parties' contract" and set a short-term date for that process to be completed. Plaintiffs and Chubb engaged in additional motion practice regarding the issue of damage to the contents, and on November 13, 2023, the Court held that "the appraisals are to identify the amount of loss (actual cash value and replacement cost) only, NOT damage or lack thereof." On January 17, 2024, the Appraisal panel entered an Award with regards to the contents claim ("Contents Award"). The Contents Award states that the replacement cost value of the contents is $1,843,422.83. Additionally, Chubb alleges it "overpaid the Contents claim by $36,879.19," which appears to stem in part from Chubb's

---

[4] Because that check contained pre-printed "in settlement of" language upon its face, to preserve their rights, Plaintiffs insisted the check be reissued without this language. [CSOF at ¶ 30; WR at ¶ 30.] After much "back and forth" between counsel for Plaintiffs and counsel for Chubb, Chubb wired these additional funds to Plaintiffs on June 13, 2023. [*Id.*]

"reclassifi[cation of some expense] payments back to indemnity payments."

IV. <u>Analysis</u>

The Wexlers seek partial summary judgment [Dkt. 268] against Chubb on Counts I (Breach of Contract, Water Damage), Count VIII (Section 155 Relief), and Count XI (Declaratory Judgment) of the SAC. The Court cannot grant summary judgment in the Wexlers' favor on Counts I and VIII for the reasons articulated in the Court's denial of Chubb's motion for summary judgment on these same counts [Dkts. 339, 340]—there are simply too many issues of material fact related to Count I and Count VIII which the trier of fact will have to resolve. The Wexlers' motion is therefore denied as to Count I and Count VIII.

With respect to Count XI for Declaratory Judgment, Plaintiffs seek a declaratory judgment that the Home and its contents should be treated as a total loss, arguing that the cost of repairs exceeds the Policy's scheduled limit for replacement of the home, and they have no certainty that the home will ever be free of elevated levels of mold. For the reasons articulated below, Plaintiffs' motion for summary judgment on Count XI is denied.

Finally, Plaintiffs also move for summary judgment on Chubb's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Affirmative Defenses [Dkt. 155]. Plaintiffs have not sought summary judgment on the remainder of Chubb's Affirmative Defenses (*i.e.*, Eighth, Eleventh, Twelfth). For the reasons explained below, the motion is granted in part and denied in part; Plaintiffs are granted summary judgment only on Chubb's First Affirmative Defense (Appraisal Clause).

A. **Count XI (Declaratory Judgment)**

Plaintiffs' argument seeking declaratory judgment focuses largely on whether the Home and its contents are a total loss, and assert this is so because Larry Schaedel, their expert "in construction cost review" opined so. [Dkt. 271 at 11.]

Yet Mr. Schaedel was Plaintiffs' appraiser (and one of the three appraisers on the Appraisal

8

Panel) at the time the Appraisal Panel "set the amount of the loss" for Plaintiffs' Home and contents. That Appraisal Panel determined the home *could indeed be repaired* (and for roughly 25% less than of Plaintiffs' asserted cost). [CSOF at ¶¶ 16, 24, 26.] While not binding, the fact the two other appraisers on the panel, one of whom was a neutral appraiser, rejected Mr. Schaedel's valuation of the amount of loss by nearly $2.4 million dollars certainly creates a question of fact regarding damages for the jury to decide.

Moreover, the jury will be able to consider each party's experts' qualifications to opine on damage assessment or repair valuation. Perhaps the jury will reject the March 2019 report from the hygienist hired by Plaintiffs themselves who determined there was virtually no mold in the Home and that the cost to remediate the home was less than $16,000. [CAF at ¶ 115.] Perhaps the jury may decide to give no weight to the testimony of Mr. Schaedel concerning his opinions about the cost to repair the covered water damages at issue here because he is a public accountant with no expertise in mold identification, testing, risk assessment, or remediation. [CAF at ¶¶ 1, 22.] On the other hand, perhaps the jury may find it totally valid that Mr. Schaedel adopted his estimates from those prepared by the Wexlers' contractor, Keith Silverman, and then merely "moved a few numbers around." [CAF at ¶ 27]; the jury may determine it is not total speculation for Mr. Schaedel to have included within his lump sum all items necessary to restore the Home to its pre-loss condition instead of just those that were necessary due to the water damage or mold abatement following events at issue in the SAC [*See* Schaedel deposition, Dkt. 320-2 at 111:13-118:1]. It is up to the jury to determine which expert to believe concerning whether the mold at the Home can be remediated or not (and to what degree remediation would be considered successful) and then determine which cost estimates reasonably stem from water-damage repairs, or which estimates include repairs for non-water-damaged work inside the Home. It is for the trier of fact to determine whether the Home and its contents are a total loss or, if they are not, the true value of Plaintiffs' losses related to the water

9

intrusion at issue here.

For these reasons and the others articulated in Chubb's response in opposition [Dkt. 276] to Plaintiffs' motion for summary judgment, the Court cannot grant summary judgment in Plaintiffs' favor on Count XI of the SAC.

**B.** **Chubb's First Affirmative Defense (Appraisal Clause)**

Chubb's First Affirmative Defense asserts that "[t]he Appraisal Award and Chubb's timely payment of the ACV satisfies all Chubb's obligations under the Policy for damage to the Wexlers' Home thereby precluding any recovery hereunder." [Dkt. 155 at 57-58.]

For the reasons set forth in Plaintiffs' memorandum in support of summary judgment [Dkt. 271 at 15], as well as the reasons articulated in Section IV(A)(i) of the Court's Memorandum Opinion and Order [Dkt. 340] on Chubb's motion for summary judgment, the Wexlers are granted summary judgment on Chubb's First Affirmative Defense. Namely, the Court has detailed numerous times how the appraisal clause is not binding on the parties in this action. Satisfaction of an amount that was never binding on the parties in this action is not a legally viable affirmative defense.

**C.** **Chubb's Second Affirmative Defense (Extended Replacement Cost)**

Chubb's Second Affirmative Defense asserts under the Policy there is no coverage for unnecessary costs incurred to restore the Home to its pre-loss condition. [Dkt. 155 at 58-59.] For the reasons detailed in Chubb's memorandum in opposition to Plaintiffs' motion for summary judgment [Dkt. 276 at 26-28], the Court finds there is a question of fact concerning whether the work and costs claimed by Plaintiffs are necessary to restore the Home to its pre-loss condition or would be considered a windfall for work outside the scope of the water loss at issue in the SAC. The Court cannot grant Plaintiffs summary judgment on Chubb's Second Affirmative Defense.

**D.** **Chubb's Third Affirmative Defense (Rebuilding to Code)**

Chubb's Third Affirmative Defense asserts that there is no Policy coverage for Rebuilding to

Code. [Dkt. 155 at 60-61.] For the reasons detailed in Chubb's memorandum in opposition to Plaintiffs' motion for summary judgment [Dkt. 276 at 30-31] as well as the reasons articulated in Section IV(A)(ii) of the Court's Memorandum Opinion and Order [Dkt. 340], the Court finds there is a question of fact concerning whether Plaintiffs have "repaired, replaced, or rebuilt" the Home as well as concerning whether the code compliance issues uncovered by the water intrusion into the Home are a "direct result of the covered loss." The Court cannot grant Plaintiffs summary judgment on Chubb's Third Affirmative Defense.

E. **Chubb's Fourth Affirmative Defense (Mold)**

Chubb's Fourth Affirmative Defense asserts that "[t]he [$10,000] coverage limit for Mold Remediation Expense was exhausted by Chubb's payments" and, therefore, no additional Mold Remediation Expenses are covered by the Policy. [Dkt. 155 at 61-64.] Due to the conflicting facts detailed in Plaintiffs' memorandum in support of their motion for summary judgment [Dkt. 271 at 18-19] and in Chubb's memorandum in opposition to Plaintiffs' motion for summary judgment [Dkt. 276 at 29-30], the Court finds there is an open question of fact concerning whether the Mold sublimit applies or was exhausted by Plaintiffs' damages claimed in the SAC. Thus, the Court cannot grant Plaintiffs summary judgment on Chubb's Fourth Affirmative Defense.

F. **Chubb's Fifth Affirmative Defense (Mold)**

Chubb's Fifth Affirmative Defense asserts that the "increased costs relating to mold and mold remediation…are barred or limited by the Mold exclusion provision of the Policy." [Dkt. 155 at 64.] Due to the conflicting facts detailed in Plaintiffs' memorandum in support of their motion for summary judgment [Dkt. 271 at 18-19] and in Chubb's memorandum in opposition to Plaintiffs' motion for summary judgment [Dkt. 276 at 29-30], the Court finds there is an open question of fact concerning whether the Mold sublimit bars or limits Plaintiffs' claimed damages. Thus, the Court cannot grant Plaintiffs summary judgment on Chubb's Fifth Affirmative Defense.

### G. Chubb's Sixth Affirmative Defense (Policy Exclusions)

Chubb's Sixth Affirmative Defense asserts that Plaintiffs' failure to take reasonable steps to protect the Home from further damage causes such damage to be barred by the Policy Exclusions for Neglect and the separate exclusion for Faulty Planning, Construction, or Maintenance. [Dkt. 155 at 64-67.] For the reasons detailed in Chubb's memorandum in opposition to Plaintiffs' motion for summary judgment [Dkt. 276 at 30-31], the Court finds there is a question of fact concerning whether Plaintiffs' actions or inactions in the wake of the water intrusion into the Home are covered or excluded (and to what extent) by the Policy. The Court cannot grant Plaintiffs summary judgment on Chubb's Sixth Affirmative Defense.

### H. Chubb's Seventh Affirmative Defense (Payment of Depreciation)

Chubb's Seventh Affirmative Defense asserts that Plaintiffs' damages are limited to reconstruction cost minus depreciation since the Home has not been repaired, replaced or rebuilt. [Dkt. 155 at 67.] For the reasons articulated in Section IV(A)(ii) of the Court's Memorandum Opinion and Order [Dkt. 340], namely the open question of material fact as to whether Plaintiffs' activities constituted "repair work," the Court cannot grant Plaintiffs summary judgment on Chubb's Seventh Affirmative Defense.

### I. Chubb's Ninth Affirmative Defense (Spoliation)

Chubb's Ninth Affirmative Defense asserts that Plaintiffs are precluded from a recovery to the extent they spoliated evidence by discarding or demolishing the Home without notice to Chubb. [Dkt. 155 at 67.] For the reasons detailed in Chubb's memorandum in opposition to Plaintiffs' motion for summary judgment [Dkt. 276 at 32-33], the Court finds there is a question of fact surrounding the gutting of the Home. The Court cannot grant Plaintiffs summary judgment on Chubb's Ninth Affirmative Defense.

### J. Chubb's Tenth Affirmative Defense (Noncompliance with Policy Conditions)

Chubb's Tenth Affirmative Defense asserts that Plaintiffs failed to prepare an inventory or proof of loss for their damaged personal property, failed to take reasonable steps to protect their property from further loss, and discarded or demolished property without prior notice to Chubb. [Dkt. 155 at 68-69.] For the reasons detailed in Chubb's memorandum in opposition to Plaintiffs' motion for summary judgment [Dkt. 276 at 33], the Court finds there is a question of fact whether Plaintiffs breached any of these Policy requirements after their loss. The Court cannot grant Plaintiffs summary judgment on Chubb's Tenth Affirmative Defense.

## V. Conclusion

For all the foregoing reasons, the Wexlers' motion for partial summary judgment [Dkt. 268] is granted only as to Chubb's First Affirmative Defense.

The in-person final pretrial conference in this matter remains set for July 15, 2025 at 1:00 p.m. in Courtroom 1700, 219 South Dearborn Street, Chicago, IL 60604. The trial remains set for July 24, 2025, through and including August 1, 2025.

**ENTERED: July 10, 2025**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge