UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY WEXLER and KENNETH WEXLER, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| CHUBB NATIONAL INSURANCE CO., and BELFOR USA GROUP, INC., | ) ) ) |
| Defendants, | ) ) ) |
| and | ) ) ) |
| CHUBB NATIONAL INSURANCE CO., | ) ) |
| Counterclaim Plaintiff, | ) ) ) |
| v. | ) ) ) |
| AMY WEXLER and KENNETH WEXLER, | ) ) |
| Counterclaim Defendants. | ) |

No. 21-cv-2543

Magistrate Judge Keri L. Holleb Hotaling

**MEMORANDUM OPINION AND ORDER**

Defendant Belfor USA Group Inc. ("Belfor") moves for summary judgment [Dkt. 259] pursuant to Federal Rule of Civil Procedure 56, on Count VI (Breach of Contract), the sole remaining count against Belfor, in Plaintiffs' (Amy Wexler and Kenneth Wexler; collectively, "Plaintiffs" or "the Wexlers") Second Amended Complaint ("SAC") [Dkt. 150]. For the reasons explained below, Belfor's motion for summary judgment [Dkt. 259] is denied.

**I.  Standard of Review**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court must construe the facts and

draw all reasonable inferences in the light most favorable to the nonmoving party. *Equal Emp. Opportunity Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 621 (7th Cir. 2018). In doing so, "[t]he court need [not] consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## II. Procedural History

In January 2021, Plaintiffs filed this suit in the Circuit Court of Cook County, Illinois, and Defendants later removed the case to this Court based on diversity jurisdiction. [Dkt. 1.] The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of Illinois and Defendants are citizens of Colorado, Indiana, Michigan, and New Jersey. [Dkt. 1-1.] On September 7, 2021, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt. 29.] This case was originally assigned to Magistrate Judge McShain. It was reassigned to Magistrate Judge Holleb Hotaling as part of a routine calendar adjustment when Judge Holleb Hotaling assumed the bench on August 10, 2023. [Dkt. 119.]

On May 30, 2024, Judge Holleb Hotaling dismissed Count X (Civil Conspiracy against Chubb and Defendant Belfor USA Group Inc. ("Belfor")) of the SAC. [Dkts. 170, 171; *see also* Dkt. 191.] On February 18, 2025, Judge Holleb Hotaling granted summary judgment in Belfor's favor on Count III (Fraud in the Inducement), Count IV (Illinois Consumer Fraud Act), Count V (Negligence), and Count IX (Bailment) of the SAC. [Dkts. 240, 241.]

### III. <u>Material Facts</u>

The Court adopts in full the statement of material facts laid out in its February 18, 2025 Memorandum Opinion and Order granting Belfor partial summary judgment in this matter. [Dkt. 241.] The additional facts necessary for purposes of the instant motion are as follows: On February 7, 2019, Environmental Group Services Limited ("EGSL") visited the Home and "performed a visual inspection, moisture survey, and Bioaerosol air sampling." [Dkt. 264-11 at 2.] On February 8, 2019, EGSL issued an Indoor Air Quality Report finding that the Wexlers' home was clean, well-maintained, free of musty or moldy odors, and free of residual water damage apart from the recent water intrusion events at issue in the instant litigation. [Dkt. 264-11.] Michelle Budniak of EGSL testified that at the time she tested it (on February 7, 2019), the humidity was "on the low side of normal" which would have "made it more difficult for mold to grow in the home." [Dkt. 264-10 at 55:1114.] Additionally, after Belfor finished its work, Chubb's adjuster Robert Paradis notified Plaintiffs that Chubb would adopt and adhere to the mold remediation protocol of Larry Schwartz of SafeStart Environmental, a hygienist hired by Plaintiffs, who continued to find mold in the Home and update his remediation protocol into June 2019. [Dkt. 270-7 (Paradis email); Dkt. 270-26 (Safestart June 15, 2019 Report).]

### IV. <u>Analysis</u>

#### A. <u>The Proper Measure of Damages</u>

"Illinois case law has been characterized as inconsistent in its application of the correct measure of damages for injuries to real property." *LaSalle Nat. Bank v. Willis*, 378 Ill. App. 3d 307, 329 (2007) (citing *First Baptist Church of Lombard v. Toll Highway Authority,* 301 Ill.App.3d 533, 544 (1998); *Williams-Bowman Rubber Co. v. Industrial Maintenance, Welding & Machining Co.*, 677 F. Supp. 539 (N.D.Ill.1987) (breach of contract case for fire-related damage to real and personal property). "Courts have concluded that the proper measure of damages for injuries to realty depends

upon the nature of the injury involved." *LaSalle Nat. Bank*, 378 Ill. App. 3d 307 (citations omitted). "When assessing damages for injury to real property under Illinois law, the first question is whether the injury is permanent or temporary. Put another way, the question is whether the property is damaged in such a way as to render repair impracticable." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 727 (7th Cir. 2010) (citations omitted). An injury is "permanent" if "the property is damaged in a manner which renders repair impracticable," and "temporary" if "the injury may be repaired in a practicable manner." *Williams-Bowman*, 677 F. Supp. at 545. Although the "general rule" for calculating damages for injury to real property is the difference between the market value of the property before the injury and its value after the injury, this measure applies when the injuries to the property are permanent in nature. *Id.* at 329; *Hudlin v. City of East St. Louis*, 591 N.E.2d 541 (Ill. App. Ct. 1992); *see also* IPI 30.18. If the injuries to the property are temporary, the cost of repair is the proper measure of damages, provided the property can be repaired without expending amounts "unreasonably disproportionate" to the benefit of the homeowner. *Arras v. Columbia Quarry Co.*, 367 N.E.2d 580 (Ill. App. Ct. 1977); *Hills of Palos Condo. Ass'n, Inc. v. I-Del, Inc.*, 255 Ill. App. 3d 448, 453, 471, 626 N.E.2d 1311 (1st Dist. 1993); *see also* IPI 30.17. In other words, the damage to real property is determined by the reasonable expense of necessary repairs to the property that was damaged or the difference between the fair market value[1] of the real property immediately before the occurrence and its fair market value immediately after the occurrence, whichever is less. IPI 30.17 and IPI 30.18.[2]

The determination of which measure of damages to apply is a jury question. *Arch of Ill., Inc.*

---

[1] Fair market value is generally considered to be "the price a willing buyer would pay a willing seller for the subject property, there being no collusion and neither party being under any compulsion." *Bloomington Pub. Sch., Dist. No. 87, McLean Cnty., Ill. v. Illinois Prop. Tax Appeal Bd.*, 379 Ill. App. 3d 387, 389 (2008) (citation omitted).

[2] The Illinois Pattern Jury Instructions ("IPI") contain instructions setting forth the measure of damages for damage to real property. IPI 30.17 discusses the Measure of Damages for Repairable Damage and IPI 30.18 discusses the Measure of Damages for Permanent or Continuing Damage. The sentence to which this footnote refers succinctly combines IPI 30.17 with IPI 30.18.

4

*v. S.K. George Painting Contractors, Inc.*, 288 Ill. App. 3d 1080, 1082 (5th Dist. 1997). The jury determines which measure of damages to apply because the alternative measure can be applied only after a factual finding. *Hills of Palos Condo. Ass'n, Inc. v. I-Del, Inc.*, 255 Ill. App. 3d 448, 453, 471 (1st Dist. 1993) (involving a suit to recover damages for alleged defects in the construction of condominiums where the alternative measure of damages—reduction in the value of the property—could be applied only after a factual finding that cost of repair was unreasonably disproportionate to its benefit or that correcting the defects would entail an unreasonable destruction of the property); *see also Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 361-62 (2002). Thus, on the issue of damages, the jury must be permitted to hear evidence on both the cost of repairs and the diminution in fair market value because the appropriate recovery is first the cost of repairs; diminution in value is appropriate only if exceeded by the cost of repairs. *Hills of Palos*, 255 Ill. App. 3d at 471 ("only the jury could determine which measure of damages to apply because the alternative measure could only be applied after a factual finding that the cost of repair was unreasonably disproportionate to its benefit…"); *Wells v. Minor*, 219 Ill. App. 3d 32, 40, 578 N.E. 2d 1337 (4th Dist. 1991) (involving a breach of contract action in the building of a house); *Williams-Bowman*, 677 F.Supp. 539; *Arch of Ill.*, 288 Ill. App. 3d at 1082.

As to Plaintiffs' contents claim, if the personal property has been permanently damaged, the proper measure of damages is the fair market value of the property immediately before destruction. *Harris v. Peters*, 653 N.E.2d 1274 (Ill. App. Ct. 1995). Belfor hotly contests whether Plaintiffs have any evidence of the pre-loss fair market value of their personal property. [Dkt. 260 at 7-8.] However, Belfor seems unaware that "[t]he absence of an established fair market value, however, does not necessarily preclude an action for loss of personal property." *Rajkovich v. Alfred Mossner Co.*, 199 Ill. App. 3d 655, 660 (1990). "Damages may be ascertained based on replacement cost, value to plaintiff, or by other rational means and from such elements as are obtainable." *Id.*; *see also Leith v.*

5

*Frost*, 899 N.E.2d 635 (Ill. App. Ct. 3d Dist. 2008) (plaintiff entitled to demonstrate value to him by such proof as circumstances admit). If the damage to the personal property is not permanent, the proper measure of damages is the reasonable cost of repairs. *Beasley v. Pelmore*, 631 N.E.2d 749 (Ill. App. Ct. 1994). But where the cost of repairs exceeds fair market value, the market value of the property becomes the ceiling on the amount of recoverable damages. *Wall v. Amoco Oil Co.*, 416 N.E.2d 705 (Ill. App. Ct. 1981).

In a breach of contract claim for damages to a building such as the instant case, Plaintiffs bear the burden of proving they sustained damages resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement. *JeanPierre Ollivier v. Alder*, 262 Ill. App. 3d 190, 196, 634 N.E. 2d 418, 422, 423 (2d Dist. 1994); *First Nat'l Bank of Elgin v. Dusold*, 180 Ill. App. 3d 714, 718, 536 N.E.2d 100, 103 (2d Dist. 1989) ("The burden of proof regarding the correct measure of plaintiff's damages is on the plaintiff, not the defendant…."). Damages are an essential element of a breach of contract action, for without damages there can be no recovery. *Kim v. Mercedes-Benz*, U.S.A., Inc., 353 Ill. App. 3d 444, 460, 818 N.E.2d 713, 726 (1st Dist. 2004); *Walker v. Ridgeview Constr. Co.*, 316 Ill. App. 3d 592, 596, 736 N.E.2d 1184, 1187 (1st Dist. 2000). Damages may not be awarded on the basis of speculation and conjecture. *Fin. Am. Commercial Corp. v. Econo Coach, Inc.*, 118 Ill. App. 3d 385, 390, 454 N.E.2d 1127 (2d Dist. 1983). That being said, it remains to be seen what evidence will be adduced at trial concerning whether the cost to repair the Wexlers' home is so disproportionate to the value obtained by such repairs that the homeowners would receive a windfall. *Bowes v. Saks & Co.*, 397 F.2d 113, 116, 119 (7th Cir. 1968) (It is "a fundamental rule that contract damages are supposed to compensate for a loss and not provide a windfall" because "the plaintiff is not to be put in a better position than it would have been had the defendant performed the terms of the [contract]"); *Meade v. Kubinski*, 661 N.E.2d 1178, 1184 (Ill. App. Ct. 1996) (holding that damages must avoid "penalizing the liable party" in a

case for breach of covenant to return leasehold in as good a condition as when it was originally leased). It also remains to be seen what evidence will be introduced as to the value of the Wexlers' personal property, even if that value is testified to by Plaintiffs one item at a time (the Court does not relish this thought). *Leith*, 899 N.E.2d 635. Again, which measure of damages to apply is a question strictly within the province of the jury. *Hills of Palos*, 255 Ill. App. 3d at 471; *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, No. 05-cv-5661, 2009 WL 1033373, at *9 (N.D. Ill. Apr. 17, 2009) (denying summary judgment, holding that "[w]hether Flint Hills' claimed cost-of-repair damages are unreasonably disproportionate to the results obtained—the threshold factual finding triggering recovery of diminution-in-value damages—is a disputed question of fact for the jury").

Thus, the Court cannot grant Belfor summary judgment based on the notion that Plaintiffs have not yet properly established their damages (as to the Home or its contents), or which measure of damages applies here.

B. **Evidence of Damages and Causation**

Next Belfor contends there is no evidence of any damages to Plaintiffs resulting from Belfor's work. [Dkt. 260 at 8-13.] However, this contention hinges on the standards for mold remediation, which even Belfor admits comes down to a "battle of the experts." [Dkt. 304 at 9.] The Court finds an open question of fact whether "Condition 1" —"normal fungal ecology"[3] was in fact (a) the appropriate condition for Belfor to return the Home to and (b) whether Belfor actually did remediate any mold in the Home to appropriate levels. In light of the fact the parties disagree about whether Belfor's remediation efforts were successful (*see, e.g.*, Paradis's May 7, 2019 email to Plaintiffs

---

[3] Although Belfor clarifies that its expert Cara Driscoll "explicitly referred to the applicable ANSI/IICRC S520 standard" to define "normal fungal ecology" [Dkt. 304 at n. 8; Dkt. 305-1], that definition is confusingly circular in that it uses the phrase "normal fungal ecology" to define "normal fungal ecology" (*i.e.*, "an indoor environment that may have settled spores, fungal fragments or traces of actual growth whose identity, location and quantity are reflective of a normal fungal ecology for a similar indoor environment"). This does not help the Court (or a trier of fact) to understand what a normal fungal ecology might or should look like in the Wexlers' Home after remediation.

adopting Safestart's mold remediation protocol [Dkt. 270-7]), and what metric to apply to define success, the Court cannot grant Belfor summary judgment based on the open factual question of whether Belfor properly returned the Home to acceptable mold levels.

Similarly, Belfor argues Plaintiffs breach of contract claim fails because of "Plaintiffs' inability to link any particular mold or mold spores to Belfor's work…" [Dkt. 304 at 9.] Construing the facts and inferences in the light most favorable to the Wexlers, *EEOC v. Costco*, 903 F.3d at 621, based on the February 8, 2019 EGSL report that the Wexlers' home was clean, well-maintained, free of musty or moldy odors, free of residual water damage other than from the events at issue in this litigation [Dkt. 264-11] and had humidity "on the low side of normal" [Dkt. 264-10 at 55:1114], the Court is persuaded that enough of a causal link has been demonstrated between the February 1, 2019 water intrusion events and the mold remaining in the property after Belfor's remediation efforts such that Plaintiff's breach of contract claim survives summary judgment. Additionally, after Belfor finished its work, Chubb's adjuster Robert Paradis notified Plaintiffs that Chubb would adopt and adhere to the mold remediation protocol of Larry Schwartz of SafeStart Environmental, a hygienist hired by Plaintiffs, who continued to find mold in the Home and update his remediation protocol into June 2019 [Dkt. 270-7; Dkt. 270-26], which a jury could consider persuasive evidence that a condition other than "normal fungal ecology" continued to exist from the water intrusion that Belfor allegedly failed to properly remediate.

In sum, the Court cannot grant summary judgment in Belfor's favor on Count VI.

**V.    Conclusion**

For all the foregoing reasons, and those generally set forth in Plaintiffs' brief in opposition to summary judgment [Dkt. 290], Plaintiffs' remaining breach of contract claim (Count VI) against Belfor remains and is a triable issue in this matter. Defendant Belfor USA Group Inc.'s Motion for Summary Judgment [Dkt. 259] is DENIED.

The in-person final pretrial conference in this matter remains set for July 15, 2025 at 1:00 p.m. in Courtroom 1700, 219 South Dearborn Street, Chicago, IL 60604. The trial remains set for July 24, 2025, through and including August 1, 2025.

**ENTERED: July 11, 2025**

                                    Hon. Keri L. Holleb Hotaling,
                                    United States Magistrate Judge